[Civ. No. 1337.   Third Appellate District.—May 10. 1915.]

## ARZA FERGUSON, Respondent, v. SOPHIA ASH et al., Appellants.

ACTION TO QUIET TITLE — REFORMATION OF DEED — INSERTION OF PROPERTY BY MISTAKE—EVIDENCE—COMPETENCY OF WITNESS.—In an action by the devisee of a wife's separate property to quiet title thereto and have the description of the same expunged from a deed intended to convey only the separate property of the husband, and which the wife only signed upon the request of the husband for the purpose of avoiding any objections to the title to his property, the attorney who drew the deed. and who took their acknowledgments thereto is competent to testify that the insertion in the deed of the description of the wife's property was by mistake, where it is shown that he had been the attorney for both and had attended to such matters as either of them brought him and possessed their confidence, but that in the particular instance he was not called upon to advise either of them, but simply requested to draw the deed and take the acknowledgments, which had been determined upon before they called upon him.

ID.—ATTORNEY AND CLIENT—COMMUNICATIONS—WHEN NOT PRIVILEGED. There are many cases in which an attorney is employed in business not properly professional and where the same might have been transacted by another agent; and in such cases, the fact that the agent sustains the character of an attorney does not render the communication attending it privileged, and it may be testified to by him the same as by any other agent.

ID.—MISTAKE—EQUITIES.—In such an action, the equity of the devisee of the wife is superior to that of the grantees under the deed, and he may maintain an action to reform the deed.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial.   George E. Church, Judge.

The facts are stated in the opinion of the court.

George Cosgrave, for Appellants.

N. C. Coldwell, for Respondent.

CHIPMAN, P. J.—This is an action to quiet title to land and to expunge the description of the land from the deed conveying the same. Plaintiff had judgment, from which and from the order denying their motion for a new trial defendants appeal.

It appears from the complaint and was found by the court: That, on October 26, 1907, Martha J. Darwin Reese died testate seized and in possession of the land in question which, by the terms of her last will, she devised to plaintiff. Due proceedings followed in the superior court, sitting in probate, whereby said land was duly distributed to plaintiff on April 5, 1909, and she thereupon became the owner thereof; on April 8, 1907, J. W. Reese and said Martha Reese were husband and wife and on that day executed a deed bearing date January 29, 1907, conveying to defendants sundry different lots and tracts of land and among them the lot the subject of the action; that there was no consideration, save love and affection, for said conveyance to defendants and the description of the land involved in the action was inserted in said conveyance to defendants "by the error and mistake and misprision of the said J. W. Reese and of the said Martha J. Darwin Reese, and of the said M. K. Harris, Esq. (who took the acknowledgment of said deed), caused and committed as follows:" (Here follow in much detail the circumstances surrounding the transaction, as alleged in the complaint and found by the court.) Briefly summarized, the facts shown were: That Mr. Reese and his wife each owned different pieces of real estate, as separate property, in which the other had no interest; Judge M. K. Harris had been and was the attorney in the transaction of business for both Reese and his wife; on or about January 27, 1907, Reese instructed Judge Harris to draw a deed sufficient in form to convey to defendants, who were his daughters by a former marriage, "an undivided one-half of his real property then owned by him lying between Ventura Avenue and Butler Avenue, in the county of Fresno, and the said J. W. Reese did not give to the said M. K. Harris any particular description of said property, but delivered to said M. K. Harris an old deed, or mortgage containing a description of various deeds of real property" and instructed

him to get his description from these documents and insert it in the deed, which Judge Harris did; thereafter, about April 8, 1907, said Reese signed and acknowledged this deed and left it with Judge Harris with instructions to retain it until after his death and thereupon to record it; thereafter, and on the eighth day of April, 1907, Reese's wife came into Harris's office "and stated that her husband had requested her to join with him in the deed which he had made to his two daughters, because the said J. W. Reese was afraid some objection would be made to the title if this was not done," whereupon Mrs. Reese signed and acknowledged the deed; that, before signing it, Judge Harris "informed her that all the property described therein was the separate property of her husband, J. W. Reese, and none other," and upon this information and without reading the deed she signed it, "under the mistaken opinion and belief that all of the property described therein was the separate property of her said husband, J. W. Reese, and in ignorance of the fact that she herself had title to any of the property mentioned and described in said deed"; that she so signed without any intention of conveying to defendants any title or estate in the property mentioned in the complaint; that, on January 29, 1907, Mrs. Reese was the owner, seized in fee and in the possession of said property last referred to and so remained to the day of her death and was ignorant of the fact when she signed said deed that it purported to convey to defendants any ownership or interest in said property.

It further appears that said J. W. Reese died about October 1, 1907, and, on the fourth day of October, 1907, said M. K. Harris filed said deed for record in the office of the county recorder of said county "and ever since the said date the defendants claim to be seized in fee of all of said real property, founding their said claim upon said deed; . . . that said claim of the said defendants is without right," etc.

The question of alleged mistake rested mainly upon the testimony of attorney Harris. His testimony was objected to on the ground that he was the attorney of both Reese and his wife and was forbidden by law to testify without consent of his client as to "any communication made by the client to him or his advice given them in the course of professional employment. (Code Civ. Proc. sec. 1881.)" We do not think there is any substantial basis for this objection. The witness

had been the attorney of Reese and wife and had attended to such matters as either of them brought him and he possessed their confidence. In this particular instance he was not called upon to advise them or either of them but simply was requested by Reese to draw a deed and take Reese's acknowledgment which Reese had determined to have done before he called upon his attorney. Beyond performing this office, which any notary could have done, his only other relation with Reese in the matter was as his agent and the agent of the grantees to retain possession of the deed until after Reese's death and then to record it. Judge Harris testified that he did not consider that he was acting as Reese's attorney.

Mrs. Reese's relation to Judge Harris in the matter of drawing the deed, as shown by his testimony, bore no semblance to that of attorney toward a client where advice is given by one to the other in the course of professional employment, as contemplated by the statute. Mrs. Reese came to his office and informed him that her husband had requested her to sign a deed and the only information given her by Judge Harris was that as it was understood that Reese was conveying an interest in his separate property it would do her no harm to sign the deed. In his examination by defendants' attorney he testified that he had been and still was Mrs. Reese's attorney. "Q. And this conversation you had with her was in that capacity, was it not? A. Not at all. Q. Not at all? A. No, sir; if it was I would not be on the witness stand to-day. I couldn't prize (pry?) my mouth open to tell about it if it was anything that I regarded in the slightest was as a communication between attorney and client; but I don't and therefore I—Q. I understand, of course, there is no thought of reflection upon you in that matter. A. No, no, but I am just telling you that." What took place between the witness and Mrs. Reese he then testified to as follows:

"It was in the morning. Mrs. Reese came right in and sat down after the usual salutations and says, 'Judge, Mr. Reese wants me to sign that deed of his to Minnie and Sophie. Now, I never asked Mr. Reese to sign any deed affecting my separate property and I don't know why he should want me to sign this deed.' And I said, 'Well, Mrs. Reese, it cannot do you any harm for you to sign it and doubtless Mr. Reese thinks some lawyer may object hereafter to the title because his wife did not join in the deed.' She said, 'If it is for that

purpose, I don't object to signing, of course.'    And with that
I added the name of Mrs. Reese as a grantor and she signed
the deed and I took her acknowledgment.    She gave me no
directions as to what to do with the deed, just signed it and
acknowledged it and went away. . . . Mrs. Reese did not read
the deed nor make any inquiry as to what was in the deed or
as to the description of the property in the deed."

It was said, in *Hatton* v. *Robinson*, 14 Pick. (Mass.) 416,
[25 Am. Dec. 415, 418] :    "There are many cases in which an
attorney is employed in business not properly professional
and where the same might have been transacted by another
agent.    In such cases the fact that the agent sustains the
character of an attorney does not render the communication
attending it privileged and that may be testified to by him as
by any other agent."    This seems to be such a case.

Appellants' second, and only remaining point, is thus
stated:    "In such a case as this, the remedy cannot be
granted except  where the plaintiff has parted with value for
the property.    The source of plaintiff's title in this case is a
will, a purely voluntary conveyance, and although plain-
tiff is disappointed, the property having theretofore been
conveyed, this does not give her any standing in a court of
equity to reform an instrument."    Appellants' claim is based
upon a principle stated in *Enos* v. *Stewart*, 138 Cal. 112, 114,
[70 Pac. 1005] :    "It is a universal principle of courts of
equity that in all cases where relief is asked by aiding and
correcting mistakes in the execution of instruments and
powers, the party seeking such relief must stand upon some
equity superior to that of the party against whom he asks it.
If the equities are equal, the law must prevail, and the court
will remain silent and passive.    The equities of respondent
are at least equal to those of appellant."

The rule of equity thus stated may not be questioned.    But
are the equities here equal ?    Beyond dispute, plaintiff took
by the devise whatever interest in or right to the property,
legal or equitable, Mrs. Reese had at her death.    She had by
mistake conveyed the legal title which was in her—a mistake
not only her own but shared in by her husband, defendants'
grantor.    The equitable title remained in her and passed to
her devisee.    If Mrs. Reese were alive and were bringing this
action, could any doubt arise as to her superior equity ?    The
law gave her the power to dispose by last will of her "estate

real and personal'' (Civ. Code, sec. 1270) ; and by her will whatever title, right, or interest she had in the property vested in plaintiff, her devisee, with a right of action to maintain it. The parties are not claiming under the same voluntary conveyance although from the same source of title. Plaintiff claims under a conveyance free from taint; defendants claim under a conveyance tainted with mistake, and herein, it seems to us, arises a superior equity in plaintiff who claims not under the deed sought to be reformed but in opposition to it. It cannot be truthfully said that defendants' deed is the voluntary conveyance of Mrs. Reese. As respondent points out, under section 1040 of the Civil Code, ''a voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general; except that a consideration is not necessary to its validity''; and her consent to the execution and acknowledgment was necessary to the validity of the deed as also that such consent should be free and real (Civ. Code, sec. 1565) ; but ''apparent consent is not real or free when obtained through mistake.'' (Civ. Code, sec. 1567.) She did not knowingly consent but if she consented the evidence beyond question showed that it was not a real or free consent but was given through mistake. It cannot be the law that where A conveys real property induced thereto by fraud or undue influence or mistake he is forever after precluded from making a voluntary conveyance by deed or by will and can only convey upon a consideration paid.

In *Enos* v. *Stewart,* 138 Cal. 112, [70 Pac. 1005], Louisa Stewart was the daughter of plaintiff and the wife of defendant James Stewart and was the grantor of the deed under which plaintiff claimed. In conveying the property to plaintiff she by mistake failed to include in the deed certain real estate which she had intended to give to plaintiff. Dying intestate, her property, under the statute of distribution, vested in plaintiff and James Stewart in equal proportions. Plaintiff brought the action to reform the deed, under which she claimed, by making it include the land omitted by mistake. Upon this state of facts the court held that plaintiff was not entitled to the relief prayed for. ''This, therefore,'' said the court, ''is an action by a grantee of a defective conveyance to obtain the aid of a court of equity to correct and reform the conveyance as against one heir at law, who is unprovided for by deceased.'' In the Enos case the grantor intended to con-

vey the property, but by mistake failed to include it in the deed. There being no consideration paid by the grantee and there being another claimant having at least equal equities, the grantee failed in her action. She would likewise have failed and for the same reason had she commenced the action against Louisa in her lifetime. It would have been a case of an unexecuted gift having no consideration to support it. The grantor in the present case did not intend to convey the property to defendants, but by mistake she did so. She did intend to convey the property to plaintiff and so expressly declared in her last will. Clearly, had she in her lifetime discovered the mistake, she could have had it corrected since she had no intention to make the conveyance and the grantee parted with nothing by way of consideration. And, as already shown, her interest in the property with the right to defend it vested in plaintiff by her last will and distribution under it. We do not doubt the correctness of the decision in the Enos case, but we think it distinguishable from the present case.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.