**McMILLEN v INDUST. COMM.**

Ohio Appeals, 2nd Dist, Franklin Co

No 3359. Decided June 26, 1941

Vorys, Sater, Seymour & Pease, Columbus. for plaintiff-appellant.

Thomas J. Herbert, Attorney General, Columbus; E. P. Felker, Columbus, and Albertus B. Conn, Columbus, Asst. Attorneys General, for defendant-appellee.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

On or about October 21, 1937, plaintiff was allegedly injured while in the course of his employment and later upon filing a claim was awarded compensation

On or about September 18, 1938, compensation was discontinued and from this order an appeal was taken to the Common Pleas Court.

The case was submitted to the court on a transcript of the record from the Industrial Commission, plaintiff and defendant agreeing that the trial court should note in the margin of the transcript its rulings upon the objections taken at the Industrial Commission's rehearing to proffer testimony. Pursuant to this agreement the court ruled upon the evidence and the objections thereto. The transcript, with its marginal notations, constitutes the bill of exceptions.

By agreement of counsel the cause was submitted to the trial court without the intervention of a jury. The finding and judgment was there returned in favor of the defendant. The pertinent part of the judgment entry reads as follows:

"Wherefore, it is ordered, adjudged and decreed, that judgment be and the same hereby is rendered in favor of the defendant and against the plaintiff's right further to participate in the state insurance fund."

Motion for new trial was duly interposed and overruled, all of which appears in the final journal entry. Within due time notice of appeal was given.

Plaintiff-appellant's assignments of errors are set out as follows:

1. The court erred in deciding an issue admitted by the pleadings, to-wit, the issue as to whether or not plaintiff-appellant was injured in the course of his employment.

2. The court erred in permitting plaintiff-appellant's physician to testify with respect to his examination of plaintiff-appellant over the objection of plaintiff-appellant.

Under assignment No. 1 we are unable to determine that the court formulated or decided as an issue the question of whether or not the plaintiff-appellant was injured in the course of his employment.

In the court's written opinion it is quite true that the trial court expressed doubt as to whether or not the record supported the original allowance of the claim by the Industrial Commission, but regardless of the doubt upon the part of the court it specifically passed upon the issue presented and denied the right of the plaintiff to further participate in the fund.

Under this claimed ground of error, appellant refers to the written opinion of the trial court, and while we can not agree that this written opinion warrants the construction placed thereon by appellant, yet if it be so conceded there still is presented the principle that courts speak only through their journals and hence the claimed error presented through the opinion can not avail.

Counsel for plaintiff-appellant cite 39 O. Jur. 1203, to the effect that the written opinion of the trial court, if properly drawn may be a sufficient compliance with the statute requiring the statement of conclusions of fact found separately from conclusions of law. We have no quarrel with this principle, but the difficulty is that no request was made for separate findings of conclusions of fact and law, and furthermore the opinion would not qualify as such even if a request had been made. Assignment No. 1 is not supported under any theory.

Assignment No. 2 presents a more serious question. The testimony presented to the trial court consisted of the entire record made in the various hearings before the Industrial Commission. This same record constitutes the bill of exceptions in our court. In submitting the question to the Commission as to the right further to participate in the fund, witnesses were called pro and con. When the matter came on for trial in the Common Pleas Court it was stipulated by and between counsel that the trial court should make marginal references as to his rulings upon the admissibility of evidence wherein the question was raised through objections. Among other witnesses appears the testimony of Dr. L. M. Jentgen. It appeared that the Doctor had been requested by the Industrial Commission to examine plaintiff and thereafter he was called to testify as to the condition found. Counsel for plaintiff-appellant in his cross-examination interrogated the Doctor as to some of the details of his examination of the plaintiff and then asked the following question:

"You never seen the man before this time?
A. Yes.
Q You say you have seen him before?
A. Yes."

Then in re-direct examination counsel for the State continued this inquiry in the following manner:

"Q. Doctor, you stated that you had seen Mr. McMillen once prior to that examination in October, 1939?
A. That is true.
Q. And at whose request did you see Mr. McMillen?
A. I saw Mr. McMillen in January, 1938, at the request of Baldwin & Nolan, attorneys at law.
Q. And what was the purpose of that examination?
A. The purpose of the examination was to determine if any sequella of trauma was present in this man's body.
Q. Did you make a report to Baldwin & Nolan?
A. I did.
Q. And what report did you make?
Question objected to and overruled by the trial court.
A. I reported that this individual was hypertensive and was suffering a sequella of cardiac vascular diseases and that I could find no evidence of a sequella of injury.
Q. And, Doctor, I will ask you whether or not your examination was made at that time for the purpose of treatment?
A. It was not.
Q. And what was the purpose of that examination, Doctor?
A. The purpose of the examination was to determine if his disability was connected with an industrial accident.
Q. And do you recall now what that industrial accident was?
A. It was the accident set out by you to me in the hypothetical question.
Q. Doctor, do you have at this time a report of your previous examination?

438

A. No, I do not.

Q. Do you recall now, Doctor, whether there was any substantial differences in your examination made then and the examination made at the present time?

Question objected to and overruled by trial court.

A. I recall that there was no difference that I recorded."

In re-cross examination, among other things, we find the following:

Q. Baldwin & Nolan, the attorneys you mentioned were counsel for Mr. McMillen at the time this examination was made by you in the early part of 1938; is that correct?

A. Yes."

It was the contention of counsel for plaintiff-appellant that the testimony of Dr. Jentgen was privileged and the admission of such testimony over the objection of plaintiff's counsel would constitute prejudicial error. The provisions relative to privileged communication are found in §11494 GC. The pertinent part of the section reads as follows:

"Sec. 11494. PRIVILEGED COMMUNICATIONS AND ACTS.—The following persons shall not testify in certain respects:

1. An attorney concerning a communication made to him by his client in that relation or his advice to his client; or a physician. concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject."

In order to qualify as a privileged communication it must not only appear that the evidence █ presented the relation of physician and patient, but also that any communication made was "in that relation". May it be said that where a physician at the instance of attorneys examines their client for the purpose of ascertaining conditions determinative of a fact essentionl to a cause of action, that he has received a communication in the relation of physician and patient? In the instant case the Doctor testifies directly that he did not examine the individual for the purpose of treatment. This answer in connection with others discloses positively that the examination was made for the sole purpose of determining whether the injured person had a right of action. Under this situation it seems to us that the examination █ tion would not quality under the definition of privileged communication.

Justice Pitney of the United States Court, delivering the opinion in the case of Arizona & New Mexico Railway Company v Clark, 235 U. S. 669, at page 676 comments on the purpose and object of privileged communications and acts as they relate to physician and patient:

"The statute recognizes that they do not stand on equal terms. The patient is more or less suffering from pain or weakness, distracted by it, ignorant of the nature or extent of his injury or illness, driven by necessity to call in a professional adviser, sometimes with little freedom of choice; he relies, perforce, upon the physician's discretion, as well as upon his skill and experience, and is obliged by the circumstances of his own condition not only to make an explanation of his ailment or injury, so far as it may be within his knowledge and may be communicable by word of mouth, but also to submit to the more intimate disclosure involved in a physical examination of his person. The physician, on the other hand, is in the full possession of his faculties. and of the knowledge which is power. Manifestly, the patient occupies, for the time, a dependent position. The chief policy of the statute, as we regard it, is to encourage full and frank disclosures to the medical adviser, by relieving the patient from the fear of embarrassing consequences."

While the above quoted observations by Justice Pitney were purely dictum, yet we consider them of value due to their sound reasoning and also that the Supreme Court of Ohio in two different cases has referred to this language of Judge Pitney. In the Pitney decision by the Supreme Court the personal privilege statute of Arizona was under consideration. On page 675 of the opinion the section is quoted. It is not as broad as is the Ohio section. In the Ohio section **11494 GC**, the words "in that relation" are added. We think this is an added reason why the quoted language of Judge Pitney is of significance.

In the case of **Harpman v Devine, 133 Oh St 1,** Judge Myers delivering the opinion, refers to Pitney's opinion in the above cited case on page 7 of his opinion and quotes with approval the above quoted portion of the Pitney opinion. The decision in the Harpman case by the Supreme Court of Ohio was by a divided court. In addition to the opinion of Judge Myers, Judge Mathias wrote a short concurring opinion. Judge Zimmerman wrote a dissent which was concurred in by Chief Justice Weygandt. The dissenting opinion went beyond the majority opinion and therein announced the view that the injured person had waived the privilege by voluntarily testifying to certain conditions. Again we are forced to say that Judge Myers' reference to the Arizona case, supra, was dictum.

In the case of **Baker v Industrial Commission of Ohio, 135 Oh St 491,** Judge Myers again on page 496 refers to the same principles and again we must say this is dictum and not essential to a determination of the case before the court.

A very similar question was involved to that in the case of **Harpman v Devine, 133 Oh St 1.**

In the case of **Pennsylvania Company v Files, 65 Oh St 403,** the Supreme Court of Ohio makes some further observations which we think may be given application. While it is true that in this Files case, supra, an entirely different situation is present, and the privileged communication provided under the statute was not involved, yet by analogy the language of the court may be given application. Syllabus 1 reads as follows:

"1. Where one who has received a physical injury from the wrongful act of another, calls upon a physician, not for the purpose of receiving medical aid and treatment, but for the purpose of enabling the physician to testify, as an expert, in a pending or proposed suit, statements made by the party under such circumstances in regard to his condition, are not admissible in evidence."

On page 406 in the per curiam opinion, appears the following:

"It appeared that the examination was not made for the purpose of treating the plaintiff but for the purpose of enabling the physician to testify as an expert at the trial. This, evidence, we think, was incompetent. It is to be distinguished from evidence of a like character, given by a physician called on for treatment. In such case, what the patient may say to his medical adviser as to his condition and how he suffers may be admitted. It is to be presumed in such case, that he states the truth, as it is to his interest that he should do so, and not mislead the physician by false statements as to his condition. He is under a strong motive in such case to state the truth, and it is on this ground that such evidence is admitted. **But where the physician is called on, not for the purpose of treatment, but to enable him to give evidence in a pending, or proposed suit, no such sanction of the truth of what he says exists; on the contrary, he is under a strong motive to deceive the physician, and not being under oath, may with impunity, make such statements as he sees fit."** (Emphasis ours).

Of course, the situation was different in that in the reported case plaintiff was seeking to have the physician tes-

tify to what the patient had said during the examination; (presumably this was intended as a narrative of history). The reasons assigned by the court for the rejection of such testimony would have full application to the instant case in sustaining the admission.

Aside from and independent of cases and referred to, we think that the words of the statute, "in that relation" necessarily limit the section, and instances where the examination is made for the purpose of determining facts solely for a lawsuit would not be privileged.

The finding and judgment of the Common Pleas Court will be affirmed.

Costs in this court will be adjudged against the appellant.

Entry may be drawn in accordance with this opinion.

GEIGER, PJ., concurs.
HORNBECK, J., dissents.

HORNBECK, J., Dissenting:

I concur with the majority as to the first assignment of error but am in disagreement as to the second assignment. In approaching the question presented by this assignment of error I give no attention whatever to the question of waiver of the privilege by the plaintiff because the majority did not consider it and counsel did not urge it. The determination of the majority is based upon the proposition that the plaintiff and Dr. Jentgen did not sustain the relationship of patient and physician because the plaintiff was not examined by the physician with any intent to treat him. It must be conceded that when the examination was made it was not in contemplation, either of the physician or the plaintiff, that he was to be treated. So that, if this is essential to a relationship of physician and patient then clearly the privileged communication statute has no application and the testimony of Dr. Jentgen was properly admitted. In my judgment such determination is too narrow, against public policy and not

in keeping with the modern interpretation of physician and patient.

The statute says that a physician may not testify, concerning a communication made to him by his patient in that relation, or his advice to his patient. When the plaintiff called upon the doctor in this case it was for the purpose of securing his opinion which was tantamount to advice, and, in probability, to cause the physician to act for him dependent upon the result of his findings. The physician was in the employ of the plaintiff, his examination was made under circumstances which would indicate that it was intended to be confidential. The result of his examination to be formulated, in his opinion, called upon him to exercise all of his skill as a physician as completely as if he had intended to prescribe for or otherwise treat the plaintiff. The relationship which the plaintiff thus sustained to the physician was that of patient as contemplated in the statute.

In this day of specialization in diagnosis it is common knowledge that a large proportion of the examintions made by physicians specializing as X-ray experts, orthopedists, etc., are made without any intention that the physician consulted will treat the one seeking the advice or opinion.

If it is sound to say that in the situation presented in this case the plaintiff did not sustain the relationsip of patient, then it is but a step to say, in the situation set forth in the last paragraph, there is no relationship of physician and patient.

The purpose for which the physician may be consulted is broader than that he shall treat his patient and seek to cure his disease or better his physical condition. It may be that it is desired that the professional skill be brought to bear upon the patient's physical condition so that the physician will act for the patient. So it was in this case. The right of the plaintiff to have the expert advice of the physician, respecting the bearing of his physical condition upon his civil rights, was as important and should be as carefully pro-

tected as would his rights to be treated to correct such condition.

The statute, being of remedial nature, should be construed liberally and with reference to the evil it was designed to remedy.

The question presented is new in Ohio and has not been decided directly or inferentially. The cases cited in the majority opinion, in my judgment, are no authority whatever for the conclusion there reached. The writer of the majority opinion is quite frank in saying that every case cited is nothing more than obiter and a reading of any and all of them is convincing that the statement is correct.

The observation of Justice Pitney in the case of Arizona & New Mexico Ry. Co. v Clark, 235 U. S. 676 is, of course, worthy of the closest consideration in its application to the case but obviously it was the purest obiter and was announced in an opinion wherein the judgment was to the effect that the communication under consideration was privileged. The observation was made in a case wherein the subject matter was germane and it should be pertinent to support the principle that a doctor called to examine a patient for the purpose of testifying only may not at the instance of the patient state what he said to the physician as to his physical condition, symptoms and sensations, **Railway Co. v Files, 65 Oh St 403.** But this is not the principle involved here.

The case cited and relied upon by the appellant, **Ausdenmoore v Holzback, 89 Oh St 381, 382,** does not touch our problem but holds that when and if the physician-patient relationship appears, then the physician may not testify either to communications of the patient by word of mouth nor communications received by the physician by the exhibition of the body or any part thereof to the physician.

There is substantial authority for the majority opinion not therein cited, which is made the subject of an annotation to Basil v Ford Motor Company, (Mich.) 107 A. L. R. 1495, and the general rule is stated as follows: In juris-

dictions having a statute prohibiting a physician or surgeon from disclosing information acquired in attending a patient in a professional capacity,

"where the physician or surgeon is consulted for the purpose of examination only, and not for treatment, communications made to him, or information acquired by him, on such examination, are not privileged."

Cases in support of the rule are cited from 15 states and the United States, but Ohio is not among them. We will not undertake to analyze the cited cases but find that, upon examination, many of them were instances where examination was made by the physician by authority of law, upon consent of the plaintiff and another party, by a physician of the defendant for the purpose of testifying and no one presents facts parallel to the instant case.

The claim that the testimony of the physician in this case was privileged is supported by Doran v Cedar Rapids & M. C. Ry. Co., (Ia.) 90 N. W. 815, 6th syllabus, which holds that under Code §4608, which prohibits a physician from disclosing any confidential information where an injured party consults a physician and discloses to him his physical condition, he is prohibited from testifying as to such knowledge except with the consent of the injured party, although, he was consulted solely for the purpose of securing his testimony as a witness. In the opinion in discussing the question as page 818, it is said,

"Counsel for appellant urge that this witness was not consulted as a physician with reference to the treatment of plaintiff but only for the purpose of securing his testimony as a witness and that. therefore, the statute does not apply to him. We are not referred to any authority which makes this distinction. It seems to us that whenever an injured party consults a physician as physician, and discloses to him his physical condition, and thus enables him to obtain information which, as an ordinary person, he would not have ob-

tained, such physician is prohibited from testifying with reference to the knowledge thus obtained, except with the consent of the injured party."

The case of Sumpter et v National Grocery Company (Wash.) 78 P. (2d), 1087, in holding that the testimony of a physician who had examined the plaintiff was privileged, the court quoted the applicable statute of the state of Washington as follows:

"A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or **act for the patient**". (Emphasis ours).

Although the emphasised part of this section is not in our statute in terms it certainly is to be read into the statute by intendment and that is the purpose which actuated the plaintiff in this case in consulting the physician and it established the relationship of patient on the part of the plaintiff to the physician. To like effect is Webb v Leowald Coal Co., (Cal.) 4 P. (2d.) 532, 77 A. L. R. 675, where it was held that the communication was privileged where an injured persons who, in order to aid her counsel in the preparation of her action for personal injuries, was examined by a physician who did not prescribe for or treat her. This is a blue bottle case under a statute which provides that the physician may not be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient. Our statute provides that the physician may may not testify concerning communications made to him by his patient in that relation. There can be no difference in the two statutes as to the facts requisite to establish the physician-patient relationship.

The testimony of the physician in this case as to information which he received from the plaintiff in his physical examination of him and his opinion to the plaintiff, were made in the relation of physician and patient and privileged and as the patient did not voluntarily release the physician from that privilege, the testimony should not have been admitted over objection and its admission, being erroneous, was in all probability prejudicial.

The judgment should be reversed.