[S. F. No. 18264. In Bank. May 15, 1951.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Dion R. Holm, City Attorney, and George E. Baglin, Deputy City Attorney, for Petitioner.

Hoberg & Finger, John Finger, Peart, Baraty & Hassard and George Smith for Respondents and Real Party in Interest.

TRAYNOR, J.—James Hession brought an action for personal injuries against the City and County of San Francisco and the Western Pacific Railroad Company. He alleged that he suffered brain concussion, nerve root damage, and nervous shock. At the request of Hession's attorneys, Dr. Joseph Catton, a physician specializing in nervous and mental diseases, twice gave Hession a neurological and psychiatric ex-

amination. In his deposition Dr. Catton testified that there was no physician-patient relationship between him and Hession; that he did not advise or treat Hession; that the sole purpose of the examination was to aid Hession's attorneys in the preparation of a lawsuit for Hession; and that he was the agent of the attorneys. He refused to answer questions regarding Hession's condition on the grounds that the information sought was privileged under subdivisions 2 and 4 of Section 1881 of the Code of Civil Procedure and that the questions called for "the use of faculties of a physician, neurologist, and psychiatrist and for an opinion based thereon, which opinion is a portion of my property which I do not wish to be deprived of without due compensation and arrangement having been made in relation thereto." Hession's counsel also claimed that the information was privileged.

Petitioner, the City and County of San Francisco, seeks a writ of mandamus to compel respondent court to order Dr. Catton to answer the questions.

### The Physician-Patient Privilege

■ Dr. Catton testified that "there was no physician-patient relationship in the sense that I was examining him for the purpose of giving him advice or treatment, . . . nor did I at any time give him any such advice or treatment; so that there wasn't that usual physician-patient relationship." He also filed an affidavit in which he averred that he "has not at any time prescribed for or treated the said James Hession as a patient or otherwise." Under such circumstances there is no physician-patient privilege under subdivision 4 of section 1881 of the Code of Civil Procedure.* That privilege cannot be invoked when no treatment is contemplated or given. "The confidence that is protected is only that which is given to a professional physician during a consultation with a view to curative treatment; for it is that relation only which the law desires to facilitate." (8 Wigmore, Evidence, 3d ed., 1940, § 2382, p. 817; *Estate of Baird,* 173 Cal. 617, 623-624 [160 P. 1078]; *Estate of Black,* 132

---

*"*Physician and patient.* A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient; . . . provided further, that where any person brings an action to recover damages for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any physician who has prescribed for or treated said person and whose testimony is material in said action shall testify. . . ."

Cal. 392, 393, 396 [64 P. 695]; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156, 166 [47 P. 1019]; *People* v. *Dutton,* 62 Cal.App. 2d 862, 863 [145 P.2d 676]; *Keller* v. *Gerber,* 49 Cal.App. 515, 524 [193 P. 809]; see 58 Am.Jur., Witnesses, § 415, p. 237; 107 A.L.R. 1495.)

▮ Even if there had been a physician-patient relationship, the privilege would be waived under section 1881(4) by Hession's bringing the action for personal injuries. (*Phillips* v. *Powell,* 210 Cal. 39, 42 [290 P. 441]; *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 360 [170 P.2d 465]; see also *Moreno* v. *New Guadalupe Mining Co.,* 35 Cal.App. 744, 754-755 [170 P. 1088].)

▮ Relying on *Webb* v. *Francis J. Lewald Coal Co.,* 214 Cal. 182 [4 P.2d 532], respondent and Hession, the real party in interest, contend that since the privilege set forth in section 1881(4) is phrased in the language "prescribe *or act* for the patient" and the personal-injury-litigant exception is phrased in the language "prescribed for or treated said person" the exception to the privilege in the case of personal-injury litigants is not so broad as the privilege. (Italics added.) They conclude that the privilege exists here because Dr. Catton "acted" for Hession when he examined him and delivered to his counsel a written report of his findings, but that the exception cannot apply because Dr. Catton did not prescribe for or treat Hession. The Webb case clearly supports this conclusion, but a reexamination of that case compels the conclusion that this ground of the decision must be disapproved.

▮ The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.

The view taken in the Webb case defeats the purpose of the statute by seizing upon the phrase "act for the patient" and giving it a meaning that cannot reasonably be attributed to the Legislature. ▮ The statute reads: "A licensed *physician or surgeon* can not, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient, which was necessary to

enable him to *prescribe or act* for the patient." (Italics added.) "Prescribe" is the correlative of "physician"; a physician prescribes for a patient. "Act" is the correlative of "surgeon"; a surgeon acts for a patient. A Missouri statute makes this clear by providing ". . . which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon." (Mo. Rev. Stats. 1949, § 491.060(s).) The California statute embodies the same meaning by using the nouns physician or surgeon in the disjunctive and the verb applicable to each—prescribe or act—likewise in the disjunctive. Even if "act" were construed as relative to a physician as well as to a surgeon, the privilege could still not be extended to personal-injury litigants that the statute excepts. The statute refers to "information acquired in *attending* the patient." (Italics added.) A physician attends a patient to treat, prescribe for, or act for him to prevent, palliate, or cure an ailment.

█ If the person examined is not a patient there is no physician-patient relationship and therefore no physician-patient privilege.

█ Even if there is a physician-patient relationship, it is settled that the privilege given by the statute is that of the patient, not that of the physician, and that if the patient does not claim the privilege, it is waived. (*Hirschberg* v. *Southern Pac. Co.*, 180 Cal. 774, 777 [183 P. 141]; *Lissak* v. *Crocker Estate Co.*, 119 Cal. 442, 445 [51 P. 688]; *Wheelock* v. *Godfrey*, 100 Cal. 578, 587 [35 P. 317]; *San Francisco Credit Clearing-House* v. *MacDonald*, 18 Cal.App. 212, 219 [122 P. 964]; see 20 Cal.L.Rev. 302, 311; 8 Wigmore, *supra*, § 2386, p. 828.) The view taken in the Webb case, however, would enable the physician to defeat the purpose of the statute by claiming the privilege even though the patient does not. The plaintiff in that case, the only one who could assert the privilege, did not do so; it was the physician who asserted it. "Respondent's counsel, however, remained silent and expressly stated to the court that they would take no part in this phase of the proceeding." (*Webb* v. *Francis J. Lewald Coal Co.*, *supra*, at p. 185.)

*The Contention That Dr. Catton Need Not Testify If He Is Not Paid More Than The Ordinary Witness Fee*

█ Doctor Catton asserted a privilege personal to himself, a privilege not to testify to knowledge and opinions that were the result of his special learning without payment of

more than the ordinary witness fee. Petitioner asks him to testify, not by reason of his expertness in a special field, but because of his knowledge of specific facts as to Hession's condition, facts pertinent to an issue to be tried. He is like any other witness with knowledge of such facts; it is immaterial that he discovered them by reason of his special training. In testifying as a witness he would simply be imparting information relevant to the issue, as he would had he been a witness to the accident in which Hession was injured. "[A] physician who has acquired knowledge of a patient or of specific facts in connection with a patient may be called upon to testify to those facts without any compensation other than the ordinary witness receives for attendance upon court." (*McClenahan* v. *Keyes*, 188 Cal. 574, 583 [206 P. 454] ; see, also, *People* v. *Barnes*, 111 Cal.App. 605, 610 [295 P. 1045] ; *People* v. *Conte*, 17 Cal.App. 771, 784 [122 P. 450, 457] ; *Ex Parte Dement*, 53 Ala. 389 [25 Am.Rep. 611] ; *Dixon* v. *People*, 168 Ill. 179 [48 N.E. 108, 39 L.R.A. 116] ; *Summers* v. *State*, 5 Tex.App. 365 [32 Am.Rep. 573] ; *Philler* v. *Waukesha County*, 139 Wis. 211 [120 N.W. 829, 17 Ann. Cas. 712, 25 L.R.A.N.S. 1040] ; 8 Wigmore, *supra*, § 2203, p. 134; 3 So.Cal.L.Rev. 448; 39 Yale L.J. 761; 2 A.L.R. 1576, 1577.)

## The Attorney-Client Privilege

Although Dr. Catton can invoke no privilege of his own and there was no physician-patient privilege in this case, we have concluded that Dr. Catton was an intermediate agent for communication between Hession and his attorneys and that Hession may therefore invoke the attorney-client privilege under section 1881, subdivision (2), of the Code of Civil Procedure. That subdivision reads: "An attorney, can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity." (See, also, Bus. & Prof. Code, § 6068(e).) This privilege is strictly construed, since it suppresses relevant facts that may be necessary for a just decision. (*Satterlee* v. *Bliss*, 36 Cal. 489, 508; *Samish* v. *Superior Court*, 28 Cal. App.2d 685, 695 [83 P.2d 305] ; see 27 Cal.Jur. 44, 51; 58 Am.Jur., Witnesses, § 464, p. 261.) It cannot be in-

voked unless the client intended the communication to be confidential (*McKnew* v. *Superior Court,* 23 Cal.2d 58, 66 [142 P.2d 1] ; *Mission Film Corp.* v. *Chadwick Pictures Corp.,* 207 Cal. 386, 390 [278 P. 855] ; *Franzen* v. *Shenk,* 192 Cal. 572, 584 [221 P. 932] ; *Sharon* v. *Sharon,* 79 Cal. 633, 675-678 [22 P. 26, 131] ; *Hager* v. *Shindler,* 29 Cal. 47, 63-64; *Ver Bryck* v. *Luby,* 67 Cal.App.2d 842, 844 [155 P.2d 706] ; *People* v. *Hall,* 55 Cal.App.2d 343, 356-357 [130 P.2d 733] ; *People* v. *White,* 102 Cal.App. 647, 650 [283 P. 368]), and only communications made to an attorney in the course of professional employment are privileged. (*McKnew* v. *Superior Court, supra,* 65-67 ; *Franzen* v. *Shenk, supra,* 584; *Sharon* v. *Sharon, supra,* 678; *Mitchell* v. *Towne,* 31 Cal.App.2d 259, 265 [87 P.2d 908] ; *Ferguson* v. *Ash,* 27 Cal.App. 375, 377-379 [150 P. 657].)

The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence. Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney. "Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading; the lawsuit will be conducted along improper lines, the trial will be full of surprises, much useless litigation may result. Thirdly, unless the client knows that his lawyer cannot be compelled to reveal what is told him, the client will suppress what he thinks to be unfavorable facts." (Morgan, Foreword, Am. Law Inst. Code of Evidence, p. 25-26.) Given the privilege, a client may make such a disclosure without fear that his attorney may be forced to reveal the information confided to him. "[T]he absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the opponent." (8 Wigmore, *supra,* § 2380a, p. 813.)

The privilege embraces not only oral or written statements but actions, signs, or other means of communicating information by a client to his attorney. (*Ex Parte McDonough,* 170 Cal. 230, 234 [149 P. 566, Ann.Cas. 1916E 327, L.R.A. 1916C 593] ; see 58 Am.Jur., Witnesses, § 486, p. 272.) "(A)lmost any act, done by the client in the sight of the attorney and during the consultation, may conceivably be done by the client as the subject of a communication, and the

only question will be whether, in the circumstances of the case, it was intended to be done as such. The client, supposedly, may make a specimen of his handwriting for the attorney's information, or may exhibit an identifying scar, or may show a secret token. If any of these acts are done as part of a communication to the attorney, and if further the communication is intended to be confidential . . ., the privilege comes into play.'' (8 Wigmore, *supra*, § 2306, p. 590.)

Petitioner contends that under the express terms of section 1881 (2) it is only the attorney and the attorney's secretary, stenographer, or clerk who cannot be examined, and that since Dr. Catton was not engaged in any of these capacities he cannot withhold the information requested.

▮ The statute specifically extends the client's privilege to preclude examination of the attorney's secretary, stenographer, or clerk regarding information of communications between attorney and client acquired in such capacities, to rule out the possibility of their coming within the general rule that the privilege does not preclude the examination of a third person who overhears or otherwise has knowledge of communications between a client and his attorney. (*Sharon* v. *Sharon,* 79 Cal. 633, 677 [22 P. 26, 131] ; *Ver Bryck* v. *Luby,* 67 Cal.App.2d 842, 844 [155 P.2d 706] ; *Mitchell* v. *Towne,* 31 Cal.App.2d 259, 265 [87 P.2d 908] ; *Cohn* v. *Cohn,* 130 Cal. App. 349, 355 [20 P.2d 61] ; *Carleton* v. *Bonham,* 60 Cal.App. 725, 726, 732-733 [214 P. 503] ; see, 8 Wigmore, *supra,* § 2311, p. 600, § 2326, p. 629; 27 Cal.Jur. 53; 11 Cal.Jur. 10-Yr. Supp. (1950 Rev.) 685, note 3; 58 Am.Jur., Witnesses, § 492, p. 275, § 518, p. 291; 53 A.L.R. 369 et seq.) ▮ It does not follow, however, that intermediate agents of communication between attorney and client fall within that general rule. Had Hession himself described his condition to his attorneys there could be no doubt that the communication would be privileged and that neither the attorney nor Hession could be compelled to reveal it, even though a client is not listed in section 1881 (2) among those who cannot be examined. (*Verdelli* v. *Gray's Harbor etc. Co.,* 115 Cal. 517 [47 P. 364] ; *Birmingham R. & E. Co.* v. *Wildman,* 119 Ala. 547 [24 So. 548, 549-550] ; *State* v. *White,* 19 Kan. 445, 446-447 [27 Am.Rep. 137] ; *Hemenway* v. *Smith,* 28 Vt. 701, 707; see, 8 Wigmore, *supra,* § 2324, p. 628.) ▮ It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both. ''(T)he

client's freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could be thus delegated. A communication, then, by *any form of agency* employed or set in motion by the client is within the privilege.

"This of course includes communications through an *interpreter*, and also communications *through a messenger* or any other *agent of transmission*, as well as communications *originating with the client's agent* and made to the attorney. It follows, too, that the communications of the *attorney's agent* to the attorney are within the privilege, because the attorney's agent is also the client's sub-agent and is acting as such for the client." (8 Wigmore, *supra*, § 2317, pp. 616-617; *New York Casualty Co.* v. *Superior Court*, 30 Cal.App.2d 130, 132-133 [85 P.2d 965]; *Lewis* v. *United Air Lines Transport Corp.*, 32 F. Supp. 21, 22; *Schmitt* v. *Emery*, 211 Minn. 547 [2 N.W.2d 413, 416, 139 A.L.R. 1242]; *In re Heile*, 65 Ohio App. 45 [29 N.E.2d 175, 176-177]; see 58 Am.Jur., Witnesses, § 472, pp. 264-265, §§ 497-498, pp. 279-280, § 502, pp. 281-281; 70 C.J., Witnesses, § 537, p. 401; cases collected in 139 A.L.R. 1256-1260; 53 A.L.R. 369, 373.) ▮ Thus, when communication by a client to his attorney regarding his physical or mental condition requires the assistance of a physician to interpret the client's condition to the attorney, the client may submit to an examination by the physician without fear that the latter will be compelled to reveal the information disclosed. (*Webb* v. *Francis J. Lewald Coal Co.*, 214 Cal. 182, 186-187 [4 P.2d 532]; see 5 So.Cal.L.Rev. 446.) In *Arnold* v. *City of Maryville*, 110 Mo.App. 254 [85 S.W. 107, 108], and *McMillen* v. *Industrial Comm. of Ohio* (Ohio App.), 37 N.E.2d 632, on which petitioner relies, it was held, as we hold in the present case, that there was no physician-patient privilege. In neither case, however, was the attorney-client privilege invoked or considered.

▮ It is contended that the purpose of the patient-litigant exception in subdivision 4 of section 1881 would be defeated if the attorney-client privilege in subdivision 2 can be invoked to prevent a physician from divulging the results of his examination of a person for the purpose of aiding his attorneys in the preparation of an action for personal injuries. The two subdivisions relate to two separate and distinct privileges. Since there was no physician-patient relation-

ship, there was no physician-patient privilege to waive; the whole of subdivision 4 including the exception was therefore inapplicable. It does not follow that if there is no physician-patient privilege there can be no attorney-client privilege. ██ The patient-litigant exception applies only to the physician-patient privilege in subdivision 4 and there is no corresponding client-litigant exception in subdivision 2. Had Dr. Catton treated Hession before being asked to serve as an intermediate agent between Hession and his attorneys, the patient-litigant exception would apply and Dr. Catton would then have been like any other witness with knowledge of facts pertinent to an issue to be tried. ██ The exception could not be defeated by asking the physician to reveal his knowledge of the facts to the attorneys, for a litigant cannot silence a witness by having him reveal his knowledge to the litigant's attorney. (See *Hickman* v. *Taylor*, 329 U.S. 495, 506-509 [67 S.Ct. 385, 91 L.Ed. 451]; 8 Wigmore, *supra*, §§ 2317-2318, pp. 615-618; 58 Am.Jur., Witnesses, § 498, pp. 279-280.) ██ Similarly, if Dr. Catton should now treat Hession, any information acquired in the course of that treatment would not be privileged, although the results of his previous examinations and his reports to Hession's attorneys would be.

The alternative writ of mandamus is discharged, and the petition for the peremptory writ is denied.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied June 14, 1951.