Filed 9/28/16  Johnson v. Super. Ct. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| JAMES JOHNSON et al.,<br><br>Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF YUBA COUNTY,<br><br>Respondent;<br><br>DENNIS L. PARKER et al.,<br><br>Real Parties in Interest. | C070028<br><br>(Super. Ct. No. YCSCCVCV080000584) |

Amid allegations of claim jumping, real parties in interest Dennis L. Parker, Sharon A. Parker, Samuel L. Eversole, and Terri L. Allen (collectively Parker) filed an amended complaint against petitioners James Johnson and William D. May (collectively Johnson) to quiet title and for declaratory relief, adverse possession, and slander of title.  The dispute arose over mining claims to a stretch of the North Yuba River.  Ultimately, respondent superior court found in favor of Parker, leaving the issue of punitive damages for future litigation.  Respondent court reopened

1

discovery pursuant to Civil Code section 3295, which authorizes discovery of a party's financial condition.[1]

Parker served discovery requests on Johnson, who objected to requests regarding the amount and source of attorney fees paid and owed. Parker brought a motion to compel discovery. Respondent court granted the motion and imposed $2,140 in sanctions. Johnson filed a petition for writ of mandate or prohibition and request for stay of the discovery order. We stayed the discovery order and issued an alternative writ of mandate. We shall deny the petition for writ of mandate or prohibition and shall vacate the stay.

### FACTUAL AND PROCEDURAL BACKGROUND

In the present case, an alleged 10 pounds of gold hidden away by James Johnson forms the basis for the underlying quarrel between the parties—conflicting claims over gold mining along the North Yuba River—and also gives rise to the discovery dispute here at issue.

In the underlying litigation, Parker filed a second amended complaint to quiet title and for declaratory relief, adverse possession, and slander of title. Ultimately, respondent court found for Parker on the quiet title, declaratory relief, and slander of title causes of action. The court did not address Parker's request for punitive damages, but gave Parker leave to conduct discovery pursuant to section 3295.

Parker served interrogatories on Johnson requesting information regarding "the amount paid by you for attorneys fees in connection with this litigation" and "unpaid attorneys fees owing by defendants to the law offices of David Young." Johnson objected to the interrogatories on grounds of attorney-client privilege, right to privacy, and relevance.

In response, Parker brought a motion to compel discovery and for sanctions. In the motion, Parker stated: "As the court has witnessed, defendants have litigated this case aggressively from its inception. They are now threatening to appeal. They have hired an Ivy

---

[1] All further statutory references are to the Civil Code unless otherwise designated.

League educated Los Angeles lawyer with offices in a high-rise in the Wilshire area. The defendants, obviously girding for appeal, paid the per diem for the court reporter for trial. . . . Testimony revealed that Mr. Johnson paid their other expert, Charles Watson, in cash– nine one hundred dollar bills. [¶] Still . . . none of the defendants have disclosed that they have any non-exempt assets whatsoever. And at least one witness has stated that Defendant James Johnson has admitted to having had 10 pounds of gold." Johnson opposed the motion, arguing legal fees paid to an attorney are privileged and confidential.

Following oral argument, respondent court granted Parker's motion to compel discovery and awarded sanctions, finding: "Plaintiffs have shown the information sought is discoverable; i.e., that it is reasonably calculated to lead to discovery of admissible evidence. . . . The information sought is the amount of attorney's fees paid and owing and the sources from which defendants pay their attorney and any documents in support of those responses. Plaintiffs seek this information in their efforts to obtain financial-condition, discovery, as ordered pursuant to Civil Code 3295. Defendants objected on the grounds of relevance, privacy and attorney-client privilege. Defendants' opposition argues only that the documents are privileged, but does not cite any persuasive authority in support of this position. In granting this motion, the Court makes no determination as to whether this information may later be determined to be relevant or admissible at trial."

The court's order, filed on December 12, 2011, directed Johnson to respond by January 4, 2012, stating: "2. Such Defendants shall produce for inspection all documents in their possession . . . indicating the source of payments made to [Johnson's counsel] David Young. [¶] 3. Defendants did not have substantial justification for their original responses to discovery or withholding the requested information, much of which was in the possession of their Counsel David Young. Defendants Johnson and May, and attorney Young are each ordered to pay, jointly and severally, to Plaintiffs . . . $2,140."

3

Johnson filed a petition for writ of mandate or prohibition with this court and request for stay of the discovery order. We stayed respondent court's discovery order and issued an alternative writ of mandate.

## DISCUSSION

We review respondent court's grant of the motion to compel and imposition of sanctions under the abuse of discretion standard. We reverse a trial court's determination of a motion to compel discovery and imposition of discovery sanctions only if we find it an " 'arbitrary, capricious or whimsical action.' [Citations.]" (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102; See *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1387.)

The court granted Parker's motion to compel based on section 3295. Section 3295 states, in part: "(a) The court may, for good cause, grant any defendant a protective order requiring the plaintiff to produce evidence of a prima facie case of liability for damages pursuant to Section 3294, prior to the introduction of evidence of: [¶] (1) The profits the defendant has gained by virtue of the wrongful course of conduct of the nature and type shown by the evidence. [¶] (2) The financial condition of the defendant."

Evidence Code section 911 provides, in part: "Except as otherwise provided by statute: [¶] . . . [¶] (b) No person has a privilege to refuse to disclose any matter or refuse to produce any writing, object, or other thing . . . ." In response to a motion to compel, the burden is on the party claiming a privilege to establish entitlement to the attorney-client privilege. (*Zimmerman v. Superior Court* (2013) 220 Cal.App.4th 389, 393.)

The privilege claimed here is the attorney-client privilege, one of the oldest privileges for confidential communications recognized at common law. (8 Wigmore, Evidence (McNaughton ed. 1961) § 2290, pp. 542-543.) In California the privilege is codified in Evidence Code section 954, as follows: "Subject to [Evidence Code] Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege

4

is claimed by:  [¶]  (a) The holder of the privilege;  [¶]  (b) A person who is authorized to claim the privilege by the holder of the privilege; or  [¶]  (c) The person who was the lawyer at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure."

Johnson argues Business and Professions Code section 6149 makes a written fee contract a confidential communication subject to the attorney-client privilege.  Therefore, respondent court abused its discretion in compelling discovery of matters protected by both attorney-client privilege and the right to privacy under the California Constitution.  In addition, Johnson contends the imposition of monetary sanctions was improper, given the attorney's duty to preserve client confidentiality.

Business and Professions Code section 6149 states:  "A written fee contract shall be deemed to be a confidential communication within the meaning of subdivision (e) of [Business and Professions Code] Section 6068 and Section 952 of the Evidence Code."  Business and Professions Code section 6068, subdivision (e)(1) states it is the duty of an attorney "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets of his or her client."

"Confidential communication" subject to attorney-client privilege "means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.)  Both the client and the attorney may claim the privilege.  (Evid. Code, § 954, subds. (a), (c).)

5

Under Evidence Code section 917, "If a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." (Evid. Code, § 917, subd. (a).) Johnson asserts the documents Parker seeks are protected by the attorney-client privilege; therefore, Parker bears the burden of establishing that the information sought is not confidential.

Parker concedes that under Business and Professions Code section 6149 written fee agreements between clients and counsel are privileged, but argues the discovery request does not include such fee agreements. Moreover, according to Parker, the attorney-client privilege extends only to the written fee contract itself, not to information regarding the amount of attorney fees paid by the client. Parker also asserts that attorney fee payments, documents indicating their source, and amount owing are not communications or information passed between a client and counsel for purposes of Evidence Code section 952.

Under Parker's analysis, Johnson has "not shown that there was any communication made or knowledge imparted between a client and attorney in need of protection. . . . Since Petitioners' financial condition is now relevant and discoverable, the attorney payments and amounts owing are not different from any other significant financial obligation. Whether Petitioners paid their significant bills, and how much, and from what sources is relevant and discoverable."

We find Parker's reasoning persuasive. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." (*Upjohn Co. v. United States* (1981) 449 U.S. 383, 389 [66 L.Ed.2d 584].) It is given "in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the

6

suppression of relevant evidence. Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney. 'Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading ; the lawsuit will be conducted along improper lines, the trial will be full of surprises, much useless litigation may result. Thirdly, unless the client knows that his lawyer cannot be compelled to reveal what is told him, the client will suppress what he thinks to be unfavorable facts.' (Morgan, Foreword, Am. Law.Inst. Code of Evidence, p. 25-26.) Given the privilege, a client may make such a disclosure without fear that his attorney may be forced to reveal the information confided to him. '[T]he absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the opponent.' (8 Wigmore, [Evidence (3d ed., 1940)] § 2380a, p. 813.)" (*City & County of S.F. v. Superior Court* (1951) 37 Cal.2d 227, 235 (*San Francisco*).)

The privilege does not protect every utterance between an attorney and client. Indeed, a statute protecting confidential communications "is strictly construed since it suppresses relevant facts that may be necessary for a just decision. [Citations.]" (*San Francisco*, *supra*, 37 Cal.2d 227, 234.) It is difficult to fathom how communications between James Johnson and his attorney on the merits of the conflicting gold mining claims would have been chilled by the possibility that information regarding the amount of attorney fees charged or the sources of payment might be disclosed in the future.

Numerous courts have found that, in the absence of unusual circumstances, the fact of a retainer, the identity of a client, the conditions of employment, and the amount of the fee and who paid it do not come within the privilege of attorney-client relations. (*In re Michaelson* (9th Cir. 1975) 511 F.2d 882, 888 and cases cited therein.) An exception is made for cases in which the existence of the attorney-client relationship might be incriminating to a client. (*Ibid.*)

"There are strong policy reasons why the existence of an attorney-client relationship, including the fee arrangement, should not be privileged absent incriminating circumstances such as outlined above. The courts have inherent power to regulate the bar. The courts have the right

to inquire into fee arrangements both to protect the client from excessive fees and to assist an attorney in collection of his fee, but more importantly, the court may inquire into fee arrangements to protect against suspected conflicts of interest. When an attorney is paid by someone other than his client to represent that client there is a real and present danger that the attorney may in actuality be representing not the interests of his client, but those of his compensator. Not only does the client have a right to know who is paying his attorney, but the court retains the right to satisfy itself that no conflict exists and that the attorney is fulfilling his duty of loyalty to his client." (*In re Michaelson*, *supra*, 511 F.2d at pp. 888-889.)

We recognize there are circumstances where the confidentiality of communications between attorney and client concerning payment for representation may be necessary to establish a relationship of trust and confidence that is indispensable to the attorney-client relationship. Thus, in *People v. Canfield* (1974) 12 Cal.3d 699, 703-704 (*Canfield*), an indigent defendant with no ability to represent himself was required to disclose financial information in order to receive the services of a public defender. The Supreme Court thought it "clear that if an accused is informed that the first information he provides his attorney is not privileged, he would not have the trust in his counsel so essential in providing effective representation. The problem is particularly serious with respect to indigents represented by the public defender, there apparently being a tendency on the part of many such defendants to regard the public defender as an arm of the state working closely with the prosecutor." (*Id*. at p. 705.) We also note that in criminal cases the policies underlying the attorney-client privilege "assume particular significance." (*People v. Meredith* (1981) 29 Cal.3d 682, 691.) This is not a criminal case, and James Johnson's circumstances are not those of the indigent defendant in *Canfield*.

In the present case, the information sought, the amount of attorney fees, is not privileged under the attorney-client privilege. It is not incriminating and it does not run afoul of Business and Professions Code section 6149, since Parker does not seek the written fee agreements between James Johnson and his counsel. The trial court did not abuse its discretion in compelling discovery and imposing sanctions for Johnson's failure to comply.

8

## DISPOSITION

The petition for writ of mandate or prohibition is denied.  The stay previously issued is vacated upon the finality of this decision.  Parker shall recover costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a).)


_____RAYE_____, P. J.


We concur:


_____HULL_____, J.


_____BUTZ_____, J.

9