[S. F. No. 14299.  In Bank.—October 29, 1931.]

PEGGY WEBB et al., Respondents, v. THE FRANCIS J. LEWALD COAL COMPANY (a Corporation) et al., Appellants.

Hadsell, Sweet & Ingalls for Appellants.

Walter McGovern for Respondents.

Lewis Mitchell, Hartley F. Peart and Russell Shearer, as *Amici Curiae.*

PRESTON, J.—Appeal by defendant Lewald Coal Company, its co-defendant having been granted a new trial, from a judgment for plaintiffs, husband and wife, in an action to recover damages for personal injuries suffered by the wife, hereinafter referred to as respondent.

On April 2, 1928, a truck of appellant and a street-car of defendant city and county collided in such a manner as to propel the truck over on to the sidewalk and cause it to smash into the front of a building occupied by respondent as a millinery store. Respondent viewed the entire occurrence from the mezzanine floor of the building and claimed to have suffered as a result of the impact and shock attendant thereon, an immediate nervous collapse resulting in continued extreme nervousness, headaches, sleeplessness, loss of weight, and other disturbances, still to some extent unhealed at the time of trial. As above indicated, the jury returned a verdict against both defendants; a new trial was denied defendant coal company and it alone appealed from said judgment.

We shall dismiss briefly appellant's first contention, to wit: That under the testimony of respondent, she was put in fear solely for the safety of the driver of the truck and not for her own safety and physical injury caused by fear for the safety of another will not support a recovery for tort. Although respondent did testify that she "felt sure he (the driver) would be killed" and was frightened and finally collapsed, a reading of all the testimony given by her warrants the inference that she was also fearful for her own safety and that her physical condition was the proximate result of the collision and not of fear for the driver's safety.

The only other question raised justifying discussion appertains to the ruling of the trial court upon the calling of one Dr. Jos. J. Catton, a neurologist, as a witness for defendant city and county and also for appellant. It appears that respondent, in order to aid her counsel in the preparation for presentation of her cause, submitted herself to a physical examination by the said witness, Dr. Catton. He reduced his conclusions to writing and delivered them to respondent's counsel, retaining a copy himself. Presumably, at least, counsel for respondent used this report upon the trial of

the action. For some reason, however, possibly financial, respondent did not cause Dr. Catton to take the witness-stand but secured the evidence of another expert physician by the name of Dr. R. W. Harvey. Upon counsel's examination of respondent, it was discovered that she had submitted to said physical examination by Dr. Catton, whereupon they sought him and were told that he would claim privilege and refuse to testify in the case; nevertheless, they subpoenaed him and, without attempting to compensate him, placed him upon the witness-stand. He was asked about making the examination, which he admitted, and about the making of the report, which he also admitted, whereupon counsel called upon him to produce his written report for their inspection. This the witness refused of his own accord to do.

At this point there followed a lengthy dissertation by the witness upon the ethics of the situation, the question of privilege and the important item of compensation. Respondent's counsel, however, remained silent and expressly stated to the court that they would take no part in this phase of the proceeding. No further questions were propounded to the witness, except that it was ascertained from him that he had not prescribed for nor treated respondent but had made only a single physical examination of her on October 19, 1929, for the use of her attorneys. Counsel for appellant propounded no questions which, if answered, would have thrown any legitimate light upon the doctor's opinion as to the physical condition of respondent. The court sustained the objection made by the witness himself to testifying upon the broad ground that he was entitled to satisfactory compensation from defendants and excused him from the stand with the statement that defendants could negotiate with him if possible, for compensation for his expert opinion and return him to the stand, to which statement of the court counsel replied that the witness had already stated that it was not compensation alone but the question of ethics as well that prevented him from answering the question. To this the court responded that they should attempt to overcome the state of mind of the witness with respect to the ethics of the situation. But, as above stated, the witness was not returned to the stand. With this as a basis, appellant asserts serious prejudicial

error resulted. We think this position cannot be successfully maintained for several reasons.

First, it is our conclusion that the testimony was privileged under the broad language of subdivision 4 of section 1881 of the Code of Civil Procedure, which reads in part: "A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient . . . ". The word "act" used in this connection seems to cover the very service performed by the witness here. He acted for respondent by making the examination and by making and delivering to her counsel a written report of his findings. He was her physician and she his patient only for this limited purpose. This seems clearly also to be a case where such information would be of value to the attorney in the proper presentation of her case.

But counsel insists that a controlling exception to the above rule is found in the further provision of said subdivision 4 of said section, which reads as follows: "provided, further, that where any person brings an action to recover damages for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any physician who has prescribed for or treated said person and whose testimony is material in said action shall testify . . . " We do not believe that the words "prescribed for or treated" of this proviso cover the identical scope of the words "to prescribe or act" found in that portion of said subdivision 4 above quoted. Webster defines the word "prescribe" as—to direct, designate or order the use of a remedy as, "the doctor prescribed quinine"; he defines the word "treat" as—to care for medicinally or surgically. A physician may properly act for a patient without having thereby prescribed for or treated him and the case before us seems fairly to be an illustration of this fact.

Moreover, if it be conceded that the witness neither prescribed for, treated nor acted for respondent as a patient, the testimony sought by the particular question at least was privileged nevertheless under subdivision 2 of said section 1881 in that it appears that respondent caused

herself to be examined and a report made for the purpose of aiding her counsel in the presentation of her cause. In other words, "communications between an attorney and the agent of his client are also entitled to the same protection from disclosure as those passing directly between the attorney and his client". (28 R. C. L., sec. 161, p. 571.)

▪ But even if technical error in the ruling of the court were to be conceded, we would nevertheless hold that no prejudice to the rights of appellant is shown by the record. The injury complained of was to the nervous system of respondent. Two experts testified in her behalf and she twice submitted herself to examination by experts for defendants, both of whom testified minimizing her claims as to injuries. She never at any time refused to submit to physical examination on behalf of appellant. All that Dr. Catton could have testified to, if favorable to appellant's side, would have been cumulative to the testimony already produced by it. If Dr. Catton or any other expert secured by defendants had desired to further examine respondent, the privilege doubtless would have been freely accorded. Under this situation it cannot be presumed that because the witness asserted a privilege, his testimony, if given, would have been favorable to the side of appellant (*Thomas* v. *Gates*, 126 Cal. 1; 6 [58 Pac. 315]; *Cook* v. *Los Angeles Ry. Corp.*, 169 Cal. 113–115 [145 Pac. 1013]).

▪ Furthermore, it may also be noted that counsel did not propound any questions to this expert, answers to which would have disclosed the physical condition of respondent. Apparently it was the purpose of counsel to secure said written report, which was not only privileged but hearsay as well, and if the report disclosed favorable matter, to then decide whether to proceed with further questions. In other words, defendants did not put themselves in a position where they would be bound by the answers made by the witness. We think that they should have been required to do this in order to get in a position to receive the benefit of error, if any was in fact committed.

The troublesome question as to when it is proper in litigation between private parties to compel an expert witness to give his professional opinion, without consent or compensation, though discussed by counsel and by *amici curiae,*

does not fairly arise on this record; hence it will not be here considered.

The judgment is affirmed.

Curtis, J., Langdon, J., Shenk, J., Richards, J., Seawell, J., and Waste, C. J., concurred.