[Civ. No. 28205. Second Dist., Div. Four. April 28, 1964.]

A. CHARLES WILSON et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GLADYS BELL, Real Party in Interest.

Smith & Wilson, A. Charles Wilson, George J. Nutil and R. William Clark for Petitioners.

No appearance for Respondent.

No appearance for Real Party in Interest.

KINGSLEY, J.—Petitioners are defendants in a personal injury action brought by Gladys Bell (the real party in

interest herein), the attorney for one of such defendants, and that defendant's insurance carrier.[1] The action is based on a claim of damages for personal injuries allegedly sustained as the result of an automobile accident which occurred on October 19, 1963. Suit was filed on November 19, 1963, and it is the theory of plaintiff that the accident was caused by the "blowout" of one of the tires on plaintiff's automobile, that the tire was defective, and that the automobile (and tire) had been purchased from the defendant petitioner.

It appears from the petition and the exhibits thereto that, on approximately October 24, 1963, the petitioning insurance carrier had employed one R. S. Gordon, an independent adjuster, to investigate the accident and that Gordon had sent its employee, Edward H. Robinson, to conduct that investigation. On December 9, 1963, plaintiff took the deposition of Robinson. At the deposition hearing, Robinson stated that, at the request of his employer, Gordon, he had gone to Carpenter's Garage, in Oceanside, California, on October 24, 1963; that he then and there observed a 1961 Corvair automobile bearing license number FKS 464 (it seems to be conceded that this was the automobile involved in the litigation); that he talked to someone there "in relation to securing the tire." As to an entire series of questions dealing with the tire and his securing of it,[2] Robinson refused to

---

[1]The caption of the petition, as filed in this court, is defective, since it does not identify either petitioner Wilson nor petitioner Universal Underwriters Insurance Company as parties, nor does it designate the real party in interest. Since the petition itself contains data sufficient to identify these parties, we have corrected the caption on this opinion.

The nature of the beneficial interest of petitioner insurance company as to a deposition of an employee of its contractor is not readily apparent. (See 3 Witkin, Cal. Procedure, Extraordinary Writs, § 55, p. 2543); in light of the disposition we make of the petition, we assume, without deciding, that its interest was sufficient to enable it to join in the present proceeding.

[2]"When you went to inspect the car, was there a tire on the left rear side of the car? ... And you told him you were presenting the collision carrier in wanting to secure the tire; is that correct? ... Did you take a tire off a 1961 Corvair at any time after October 19, 1963, up to the present time? ... Did you come into possession of a tire from Carpenter's Garage, which tire had been secured from a Corvair, license number FKS 464, a 1961 Corvair, after October 19, 1963, up to the present day? ... Did you inspect a 1961 Corvair on or about October 22 or 23 at Carpenter's Garage? ... Did you observe whether or not that 1961 Corvair had a rear tire on it which had a blowout? ... What was the condition of the rear tire on the 1961 Corvair, FKS 464, located at Carpenter's Garage at the time you inspected it between October 22nd

answer on the instructions of counsel for the defendant.

Robinson stated that, on or about November 6, 1963, he had a conversation with a Jack Lynch from the office of plaintiff's attorneys; he refused to answer questions pertaining to the tire and the conversation relating to it.[3]

Robinson stated that he took a written statement from plaintiff, Gladys Bell; that at the time he took the statement there was a Ralph Heller who was a hospital administrator in the area; that he identified himself by giving Heller his business card and telling him that he represented R. S. Gordon & Company, but he did not know if he told Heller whom Gordon represented. He refused to answer a series of questions concerning his conversation with Miss Bell with respect to taking a statement from her and inspecting the tire.[4]

---

and the 1st of December? ... Where did you take the tire which you secured from Carpenter's Garage after October 19, 1963? ... At the time that the tire was delivered to you, where was the rim? ... At the time the tire was delivered to you, was it delivered with a rim on it? ... Did you make any identifying marks on the tire at the time that you secured the tire from Carpenter's Garage, or any time thereafter while the tire was in your possession? ... Was there any serial number on the tire that you took from Carpenter's Garage which was the tire that was on the Corvair at the time of the accident? .... Did you take any photographs of the tire that was removed from the Corvair in question after the accident? ... Did you tell John Mockey from Carpenter's Garage at any time whatsoever that the tire which was blown out was a recap which had been purchased by Miss Gladys Bell before the accident?"

[3] "At that time did Mr. Lynch ask to see the tire which had been removed from the 1961 Corvair, which is the subject of this accident? ... At that time did you refuse to allow Mr. Lynch to see the tire which had been removed from the Corvair which is the subject of this accident? ... At the time you secured the tire which is the subject of this accident were the tire, rim and the wheel all in one piece? ... When was the last time you saw the tire which was removed or taken by you from the 1961 Corvair which is the subject of this action? ..."

[4] "Approximately what time, what was the date and time, that you had the conversation with Miss Gladys Bell? ... Was it approximately October 24, 1963, when you had a conversation with Miss Gladys Bell? ... At that time was Miss Gladys Bell in the San Diego County Hospital? ... At the time you saw Miss Gladys Bell was she bedridden? ... Had she been under any narcotics that you could observe? ... Did she appear to be completely intelligible as far as her conversation is concerned? ... Did you advise Miss Gladys Bell that she had to sign a statement, because you were representing her collision carrier? ... Did you tell Miss Gladys Bell that this tire was a retread tire? ... Did you tell Miss Gladys Bell that this tire was a recapped tire? .. Did you tell Miss Bell that because she was aware at the time that this statement was being signed that you had told her the tire was a recap,

Robinson stated that he took written statements also from Ruby Meeks, John Felix, Alfred Johnson and William B. Justis. He stated that he talked to Mr. Felix after the accident, but refused to answer this question: "What did Mr. Felix say to you?"

Robinson stated that he inspected the scene of the accident, but refused to answer questions relating thereto.[5]

Plaintiff's counsel stated: "We have another series of questions relating to the tire, but it appears to me that at the present time unless we have certain questions answered in Department 63 it is sort of useless to go along on this line of questioning, so we will just adjourn the deposition and go up to Department 63 and get a ruling on it." Defense counsel then stated: "All right. I would like to make a statement for the record at this time. Our objections are based on what we believe to be the work product rule, that the investigator merely has to disclose the persons that he has seen, but what he said or did during the course of said investigation we believe is privileged."

Plaintiff thereupon moved for an order, under section 2034, subdivision (a), of the Code of Civil Procedure, requiring Robinson to answer the questions above set out, and seeking, also (as permitted by the same statute), an award of attorney fees in connection with the application.

The declaration filed by plaintiff's counsel, in support of her application for the order to require answers clearly sets forth facts sufficient to make at least a prima facie showing

that she would have to say that she knew the tire was a recap? ... Did Miss Bell refuse to sign the statement? . .. Did you tell Gladys Bell that you would mail her a copy of the statement? ... Have you ever mailed Gladys Bell a copy of her statement? . . . What was the complete substance of the conversation that you had with Gladys Bell on or about October 24, 1963, at the San Diego County Hospital? ... Was there anything stated by you to Miss Gladys Bell or anything stated by Miss Gladys Bell to you which is not incorporated in the written statement that you have from Gladys Bell? . . ."

[5] "Approximately what date did you inspect the scene of the accident? ... Did you observe any skid marks at the time that you inspected the scene of the accident? ... Did you observe any debris at the time that you inspected the scene of the accident? ... At the time that you secured the tire from Carpenter's Garage there was a piece about 18 inches long that had separated from the tire on the Corvair in question. Did you ever locate the missing piece? ... Did you ever find a rubber strip about 18 inches long anywhere near the scene of the accident which appeared to be the missing strip from this particular tire?"

of necessity for obtaining the information desired by the questions put to the witness.[6]

In opposition thereto, the declaration of defendants' counsel states only that "They believe that these questions all relate to what the said Investigator investigated specifically for the defendants, and thus *for their attorneys*; that this information is privileged under the 'Work Product' rule of section 2016 of the Code of Civil Procedure as Amended in 1963." It is conceded that Robinson took the tire from the automobile, but it is contended that "the information that the plaintiff is seeking can be discovered by their own investigation"; that "the information concerning the tire and the condition the tire was in when Edward H. Robinson took it can be established by checking with the Carpenter's Garage where the tire was before Robinson took the same. This condition can then be compared with its present condition to see if any changes have been made." It is stated that,

---

[6]We quote pertinent parts of that declaration: ". . . ; that Edward H. Robinson took possession of the tire from Carpenter's Garage and has had possession of the tire up until the time that it was forwarded to Cal-Tech to be inspected by its expert. That although your declarant is now in possession of the tire at the present time, it is necessary to establish what condition the tire was in at the time Edward H. Robinson secured possession of the said tire and further the condition of the tire at the time Edward H. Robinson forwarded the tire to Cal-Tech.

"That certain representations were made by Edward L. Robinson at the time Mr. Robinson secured a written statement from the plaintiff, in that Edward H. Robinson advised plaintiff that he was representing her for her damage to her car. In the event that said statement is introduced into evidence it will become pertinent to all of the issues and circumstances and facts relating to the obtaining of said statement, including any representations that were made by Edward H. Robinson. That certain questions were propounded for the purpose of ascertaining the facts and circumstances surrounding the taking of the written statement from plaintiff. That furthermore, certain representations were made to the operators of Carpenter's Garage at the time that Mr. Robinson secured possession of said tire, and it is necessary to ascertain the substance of the representations which were made by Edward H. Robinson to the owner and/or operators of Carpenter's Garage at the time that he secured possession of the tire.

". . . . . . . . . .

". . . That failure to compel deponent to answer said questions will unfavorably prejudice the plaintiff's action in that she will not be able to establish the necessary foundation to introduce the tire into evidence, or any expert testimony relating to the inspection and examination of said tire, since the plaintiff's testimony cannot establish that the tire is substantially in the same condition now as it was at the time of the accident or that this is the same tire which was involved in the accident."

subsequent to the date of the deposition, defendant has furnished plaintiff's attorneys with the statement of plaintiff taken by Robinson. Petitioners' points and authorities consisted only of the quotation of a portion of a sentence from section 2016, Code of Civil Procedure: "The work product of an attorney shall not be discoverable unless the Court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice . . ."; and the statement that "Communications between an attorney and the agent of his client are entitled to protection from disclosure," citing *Webb* v. *Francis J. Lewald Coal Co.*, 214 Cal. 182, 187 [4 P.2d 532, 77 A.L.R. 675]; and Louisell, Modern California Discovery, page 292.

The trial court granted plaintiff's motion and assessed attorney fees in the amount of $150 against counsel for defendant Downtown Ford Sales, Inc. In its memorandum decision, the trial court said: "Even if the court were disposed to assume that counsel was acting in good faith at the time the deposition was taken, the basis for any such assumption is dispelled by counsel's complete failure to follow through by making an appropriate showing in opposition to plaintiff's motion of the facts on which he relies to support his objections, or as a matter of law. While plaintiff's points and authorities leave much to be desired, it is quite apparent from the record, and the court finds that the refusal of the witness to answer the questions was without substantial justification and that plaintiff's motion is made with substantial justification, within the meaning of section 2034, subdivision (a), Code of Civil Procedure.

"While it is true that Mr. Wilson, who appeared as attorney for defendant at the deposition, has filed a declaration in opposition to plaintiff's motion, it is apparent from that declaration that he has no personal knowledge of any facts material to the matter now before the court. Plaintiff was injured in an automobile accident on October 19, 1963, allegedly caused by the blowout of one of the tires on her automobile which she claims to have purchased from defendant. The deposition shows that immediately thereafter the witness was employed by defendant's insurance carrier to make an appropriate investigation, which seems to have been completed about October 24, 1963. Throughout the relatively brief deposition of the witness taken December 9, defendant's attorney objected to all questions designed to find out

what he did or saw or said during the investigation, and instructed the witness not to answer. The complaint in this case was not filed until November 19, 1963. Defendant's answer was filed December 4. Mr. Wilson makes no showing in his declaration that, as defendant's attorney, he had anything to do with the employment of the witness as an investigator (cf. *David* v. *City of Los Angeles*, 5 Cal.Disc. Proc. 90), or that he had any knowledge of the accident or of the activities of the investigator at any time before he was employed to represent defendant after the complaint was filed.

"Mr. Wilson states in his declaration that 'they believe' that the information called for by the questions 'is privileged under the "work product" rule of section 2016 of the Code of Civil Procedure as amended in 1963.' Counsel's belief is immaterial unless it is backed up by proof of the facts on which it is based. (See *Anderson* v. *Fuller*, 5 Cal.Disc. Proc. 76; *Wolpe* v. *Camino-Poyales*, 5 Cal.Disc. Proc. 97, Metropolitan News, Mar. 5, 1964.) An affidavit or declaration which goes no further than to state counsel's belief or opinions or conclusions does not constitute evidence. (*Tri-State Mfg. Co.* v. *Superior Court*, 224 Cal.App.2d 442 [36 Cal.Rptr. 750]; *Colvig* v. *KSFO*, 224 Cal.App.2d 357 [36 Cal.Rptr. 701].) Mr. Wilson also states in his declaration that 'they believe the information that the plaintiff is seeking can be discovered by their own investigation.' They fail, however, to show how plaintiff can adequately discover what the investigator did or saw or heard except by direct questions put to the investigator himself. (Cf. *Grand Lake Drive In, Inc.* v. *Superior Court*, 179 Cal.App.2d 122 [3 Cal.Rptr. 621, 86 A.L.R.2d 129].)

"In seeking to avoid the imposition of sanctions, Mr. Wilson says in his declaration: 'By reason of the recent amendment to section 2016 of the Code of Civil Procedure, declarant believes that if it [*sic*] reasonably believes such information [as is called for by the questions] is privileged and that the Court must make the determination as to what questions should be answered, then counsel should not be penalized by sanctions if he has found his interpretation of said section of the Code on privilege was incorrect.' This argument is without merit in the absence of any attempt to show in opposition to plaintiff's motion that counsel's belief was reasonable as a matter of fact or as a matter of law. Mere reference in his points and authorities to section 2016, Code

of Civil Procedure, and to the rule that 'communications between an attorney and the agent of his client are entitled to protection from disclosure,' and to a stray page in Professor Louisell's recent book, 'Modern California Discovery,' without more, fall far short of convincing this court that counsel ever had any reasonable grounds for believing what he says he believes with respect to work product and privilege.

''The conduct of counsel for defendant as outlined above cast a wholly unnecessary burden on counsel for plaintiff and on the court.''

The present petition for a writ of prohibition followed. We deny the petition but, because of the frequency with which some of the problems herein involved are presented by counsel, we have determined to set forth our reasons in a formal manner.

I

 It is clear that none of the questions put to Robinson in any way involve privileged communications. By no stretch of the imagination can a statement made by the plaintiff to an investigator hired by the defendant be deemed to have been privileged; nor, under any circumstances, would the observations of that investigator at the time of taking her statement, nor the statements made *by him to her*, be within any privilege known to our law.

 While, under some circumstances, statements made by an employee of a defendant, concerning matters within his own knowledge, may be privileged (see *D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal.Rptr. 468, 388 P.2d 700]), the testimony here sought is not the statement of any employee of petitioning defendant as to the facts of the lawsuit, but information relating to the *conduct* of an investigator, dealing with other persons, none of whom are shown to be employees of defendant or, in any way, in a position where they would have intended as confidential anything said to, or done with, the investigator. We can see no basis in any decided case for any claim of confidentiality.

Further, none of the questions seek any statement made by Robinson, either to his employer, or to defendant, or to counsel. While communications between lawyer and client are privileged, the privilege does not extend to an independent inquiry, at trial or on deposition, as to the facts so communicated. As was said in *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, at page 355 [19

Cal.Rptr. 473, 369 P.2d 1]: "This knowledge, in and of itself, is not privileged, nor does it acquire a privileged status merely because it may have been communicated to the attorney."

## II

Nor can we see, under the facts of this case, any possible basis for a reliance on the so-called "work product" doctrine. As the trial judge pointed out in his memorandum, Robinson was hired by an agent of the insurance carrier, not by defense counsel; the matters as to which he was questioned took place before the lawsuit was filed and (at least as far as the declarations show) long before counsel was retained by or on behalf of defendant. Whatever the extent of the concept of an attorney's work product may be, it is clear that, given the broadest possible definition, it is still the *attorney's* work, or that of his agents or employees, that is involved, and the attorney cannot, by retroactive adoption, convert the independent work of another, already performed, into his own.

In addition, as we have pointed out above, plaintiff does not seek, and the trial court did not order, any disclosure of any communication made to defense counsel, nor even communications made to the insurance carrier. All that is sought is the testimony of the investigator, working on his own, and not as an agent or employee of the attorney, as to what he said, did, observed and heard, while making his own investigation.

## III

From what has been said, it is clear that the trial court was justified not only in its order requiring answers, but in its assessment of attorney fees against counsel who, without justification, invoked rules patently not in point. The amount assessed was well within the discretion of the trial court.

The petition for a writ of prohbition is denied.

Burke, P. J., and Jefferson, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied May 27, 1964.