973 F.2d 1490
 In re AIR CRASH DISASTER NEAR CERRITOS, CALIFORNIA, AUGUST 31, 1986.
Joan L. DI COSTA; Gilbert Di Costa, Plaintiffs-Appellants,
v.
AERONAVES DE MEXICO, S.A., dba: Aeromexico; Daniel W.
O'Connell; John P. Kramer, as personal representatives for
the Estate of William Kenneth Kramer, deceased; Roland Paul
Furman, et al; United States of America, Defendants-Appellees.
 No. 90-55224.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 5, 1991.
Decided Sept. 1, 1992.
 
 Ronald L.M. Goldman, Goldman & Stone, Marina Del Rey, Cal., for plaintiffs-appellants.
 Marianne Finnerty, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, CANBY and RYMER, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Joan and Gilbert DiCosta appeal the district court's dismissal of their claims for negligent infliction of emotional distress under the Federal Tort Claims Act ("Act"), 28 U.S.C. § 2674. We reverse.
 
 BACKGROUND
 
 2
 The DiCostas' complaint alleges that they were in their home on August 31, 1986 when two airplanes collided in mid-air and crashed to the ground in the DiCostas' neighborhood.[1] The DiCostas allege that the crash was proximately caused, in part, by the negligence of air traffic controllers at Los Angeles International Airport who were acting within the scope of their employment with the United States. The DiCostas further allege that they witnessed the collision and its aftermath,[2] and that they "were within the zone of danger created because of the mid-air collision and crash of the aircraft ... and suffered severe and lasting emotional distress, fright and shock as a result of fear for [their] own safety." The injuries allegedly suffered by the DiCostas--including "great emotional disturbance," "shock and injury to their ... nervous system[s]," and "great mental and physical pain"--were asserted to be severe enough to require medical treatment of Joan DiCosta and to cause problems in the DiCostas' marriage amounting to a loss of consortium.
 
 
 3
 The district court dismissed the DiCostas' complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court concluded that the complaint does not state a claim for negligent infliction of emotional distress under California law, and therefore could not support a claim against the United States under the Act. See 28 U.S.C. § 2674 (United States is liable "in the same manner and to the same extent as [a] private individual under like circumstances"). In reaching its decision, the district court considered and rejected both theories of liability advanced by the DiCostas: (1) that they were bystanders who witnessed the crash which was the foreseeable result of the United States' negligence, and (2) that they were direct victims of the United States' negligence because they were put in direct and reasonable fear of their own safety while within the "zone of danger" of the collision and crash. The DiCostas now appeal the dismissal of their complaint, but press only their "direct victim" theory of liability.
 
 DISCUSSION
 
 4
 We review de novo the district court's dismissal of the DiCostas' complaint. Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine whether California courts would hold the DiCostas to have stated a claim for negligent infliction of emotional distress.
 
 
 5
 Two early California emotional distress cases suggest quite clearly that the DiCostas have stated a valid claim. In Webb v. Francis J. Lewald Coal Co., 214 Cal. 182, 4 P.2d 532 (1931), the California Supreme Court permitted the plaintiff to recover for the emotional distress and associated physical disabilities she suffered when she witnessed a truck crash into a building in which she was standing. The plaintiff was not hit by the truck, but she feared for her own safety. Webb, 4 P.2d at 533. In Cook v. Maier, 33 Cal.App.2d 581, 92 P.2d 434 (1939), the California Court of Appeals held that a plaintiff stated claims for emotional distress which she allegedly suffered when she witnessed an automobile crash into her home. Again, the plaintiff was not hit, but she was fearful for her own safety. Cook, 92 P.2d at 435.[3]
 
 
 6
 The United States argues that the California Supreme Court's recent decision in Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), signalled a shift away from permitting recovery for direct victims of negligence who suffered no impact either to their person or their property. We disagree. Thing was not concerned with "direct victim" cases such as Webb and Cook. Thing addressed instead a second line of California cases which permits bystanders who witness an injury to another person to sue the negligent party who caused the injury.[4] See Estrada v. Aeronaves de Mexico, 967 F.2d 1421 (9th Cir.1992) (applying Thing to bystander injuries arising from same airplane crash as present case). We must examine those California cases briefly to show the context in which Thing was decided, and demonstrate why its rule does not apply here.
 
 
 7
 The "bystander" line of cases began with the short-lived Amaya v. Home Ice, Fuel & Supply Co., 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513 (1963), which refused to recognize "bystander" liability. The California Supreme Court upheld the dismissal of the plaintiff's complaint which was predicated exclusively on the fright and shock the plaintiff suffered from watching her seventeen-month old son be run over by a truck. Amaya, 29 Cal.Rptr. at 34, 379 P.2d at 514.[5] Although principally addressing "bystander" cases, Amaya did effect a change in "direct victim" cases by rejecting the requirement that plaintiffs allege a physical impact upon themselves caused by the negligent act in order to state a valid claim for negligent infliction of emotional distress. Id., 29 Cal.Rptr. at 35, 771 P.2d at 515. After Amaya, direct victim plaintiffs needed only to allege that they were within the "zone of danger" created by the negligent act.
 
 
 8
 Amaya was overruled by Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), which allowed "bystanders" to recover if they were (1) near the scene of the accident, (2) directly shocked by witnessing the accident, and (3) closely related to the injured third party. Dillon, 69 Cal.Rptr. at 80, 441 P.2d at 920. The Dillon court rejected as arbitrary and too restrictive the requirement that plaintiffs be within the "zone of danger." Id., 69 Cal.Rptr. at 75-76, 441 P.2d at 915-16. California's courts were now to consider only whether the injury was reasonably foreseeable by the negligent actor. This change, while necessary to permitting "bystander" liability, also loosened the reins on "direct victim" liability.
 
 
 9
 In Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), the California Supreme Court blurred the lines between "bystander" and "direct victim" claims by permitting recovery on a "direct victim" theory to a husband whose wife was negligently and incorrectly diagnosed as having syphilis. The doctor told the wife to tell her husband that she was infected, and to have him get a physical examination. Molien, 167 Cal.Rptr. at 832, 616 P.2d at 814. The court concluded that the husband's emotional distress was reasonably foreseeable by the doctor, and that the husband was, therefore, entitled to recover. Id., 167 Cal.Rptr. at 835-36, 616 P.2d at 817.
 
 
 10
 Thus, at the time that the California Supreme Court was presented with Thing, there had been a trend to blur the distinction between "bystander" and "direct victim" cases, and to expand to the limits of foreseeability the liability for bystanders' emotional injuries. The opinion in Thing reverses these trends. Thing was a classic bystander case; a mother sought to recover for emotional distress that she suffered because her son was injured in an accident that she did not witness. In rejecting her claim, the California Supreme Court sought to rationalize its prior line of decisions. The opinion in Thing disapproved of Molien, and the government makes much of that fact in our case. But the disapproval was directed to the tendency to define as a "direct victim" any person whose emotional distress was foreseeable. See Thing, 257 Cal.Rptr. at 874-76, 771 P.2d at 823. Such a loose definition, among other disadvantages, permitted persons "who had not been at or near the scene of the negligent act to recover for emotional distress on a pure foreseeability-of-the-injury basis." Id. It also permitted such remote "bystanders" to evade the strict requirements of the three-pronged test established in Dillon. The Court in Thing curbed these tendencies by reasserting narrow boundaries for bystander emotional injuries:
 
 
 11
 We conclude, therefore, that a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress....
 
 
 12
 Id., 257 Cal.Rptr. at 880-81, 771 P.2d at 829-30 (footnotes omitted; emphasis added). It seems apparent to us from this passage that Thing was addressed to cases in which damages are sought for emotional distress caused by injury to others. It did not change the rule that a person who is in the path of negligent conduct and reasonably fears for his or her own safety may recover for resulting emotional distress. That person is not a bystander.
 
 
 13
 Our reading of Thing is confirmed by Christensen v. Superior Court, 54 Cal.3d 868, 2 Cal.Rptr.2d, 79, 820 P.2d 181 (1991), the California Supreme Court's most recent word on negligent infliction of emotional distress. Christensen involved claims of negligent and intentional infliction of emotional distress against a crematorium that had, among other acts, sold body parts for profit and improperly cremated bodies. The defendants sought to impose Thing 's limiting formula to deny recovery to members of the families of the deceased who did not witness the negligent conduct. The Court rejected that contention and held that family members of the deceased were entitled to recover because the duties of the crematorium ran directly to the bereaved families of the decedents. The Court explained:
 
 
 14
 Thing and Dillon v. Legg ... addressed the question of duty in circumstances in which a plaintiff seeks to recover damages as a percipient witness to the injury of another. "[T]he Dillon principles represent but the means for resolving the duty question in the specific factual context of the 'bystander witness' scenario...." ... The plaintiffs had not themselves been threatened with physical injury and their emotional distress did not arise out of fear for their own safety.
 
 
 15
 ... Amaya, Dillon, and Thing reflect a public policy exception which limits the right of a bystander who did not suffer physical injury and was not threatened with such injury to recover damages for the emotional distress he suffered as a result of witnessing negligent conduct which caused physical injury to a third person....
 
 
 16
 * * * * * *
 
 
 17
 Application of these principles does not compel a conclusion that the limitations deemed appropriate in Dillon v. Legg, supra, and Thing v. La Chusa, supra, to limit recovery by bystanders should apply in other situations, and particularly in that presented here.
 
 
 18
 Id., 2 Cal.Rptr.2d at 87-88, 820 P.2d at 189-90 (emphasis added).
 
 
 19
 We conclude that the rationale in Christensen establishes the continuing vitality of "direct victim" negligent infliction claims in spite of the cautionary language in Thing. It is clear that, when the recovery is for distress caused by fear for one's own safety, rather than by an injury to another, the bystander restrictions reiterated in Thing are simply inapplicable. It follows that the Di Costas have stated a claim upon which relief may be granted for negligent infliction of emotional distress.[6] Of course, the Di Costas must establish at trial by a preponderance of evidence that they suffered emotional distress because they reasonably feared for their own safety, rather than because they viewed the wreckage or injury to others caused by the collision.
 
 
 20
 REVERSED.
 
 RYMER, Circuit Judge, dissenting:
 
 21
 I dissent, because I do not believe the California Supreme Court would recognize recovery for emotional distress in a negligence action on account of two loud noises which caused plaintiffs to fear for their safety. The Di Costas, who were inside the bedroom of their home when they heard two sounds like sonic booms, claim they were in the "zone of danger" created by the collision and crash of two aircraft in the vicinity of their house.[1] They did not see the collision or the crash, know what caused the noise, or suffer or witness physical injury or property damage. No case upon which the Di Costas rely extends recovery to persons who fear for their safety, but have no contemporaneous comprehension of an injury-threatening event that places them in danger. Under these circumstances, policy considerations that are relevant in determining whether a particular plaintiff may recover damages for emotional distress, but which are not discussed by the majority, support the line drawn by the district court. I would, therefore, affirm.
 
 
 22
 As Judge Canby explains, for years the California courts have recognized recovery for emotional distress on account of reasonable fear for one's own safety. See Lindley v. Knowlton, 179 Cal. 298, 176 P. 440 (1918); Webb v. Francis J. Lewald Coal Co., 214 Cal. 182, 4 P.2d 532 (1931), partially overruled on other grounds, San Francisco v. Superior Court, 37 Cal.2d 227, 231 P.2d 26 (1951); Cook v. Maier, 33 Cal.App.2d 581, 92 P.2d 434 (1939); see also Amaya v. Home Ice, Fuel & Supply Co., 59 Cal.2d 295, 300-04, 29 Cal.Rptr. 33, 379 P.2d 513 (1963) (acknowledging Lindley and Webb but declining to extend recovery to fear for safety of others), partially overruled by Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968); Vanoni v. Western Airlines, 247 Cal.App.2d 793, 56 Cal.Rptr. 115 (1967). These cases have never been overruled, and I agree with the majority that they remain good law.
 
 
 23
 Over time, the California Supreme Court has also come to recognize "bystander" and "direct victim" liability for the negligent infliction of emotional distress. Neither applies here, but the majority refers to liability to "direct victims" and to those who fear for their own safety interchangeably. As the development of these concepts shows, however, both "bystander" and "direct victim" liability are distinguishable from liability based on fear for one's own safety, and from the Di Costas' complaint.
 
 
 24
 Recovery for "bystanders"--i.e., those who have no fear for their own safety, but rather fear for the safety of another--was first rejected in Amaya, 59 Cal.2d at 299-304, 29 Cal.Rptr. 33, 379 P.2d 513 (permitting recovery for emotional distress without impact, but refusing to extend recovery to those who fear for someone else's safety but not their own), then recognized with limitations in Dillon, 68 Cal.2d at 732-33, 740-41, 69 Cal.Rptr. 72, 441 P.2d 912 (criticizing Amaya 's "zone of danger" restriction and holding that a "bystander" who is not in danger may recover for distress foreseeably caused by witnessing injury to a relative), and, most recently, refined in Thing v. La Chusa, 48 Cal.3d 644, 647, 257 Cal.Rptr. 865, 771 P.2d 814 (1989) (limiting bystander liability to those who are "present at the scene of the injury-producing event" and who suffer severe emotional distress from observing injury to close family members).
 
 
 25
 When the court moved in Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 928, 167 Cal.Rptr. 831, 616 P.2d 813 (1980), from requiring physical injury apart from emotional distress (as was the case when Lindley and Webb were decided) to recognizing that severe emotional distress is itself compensable, it also recognized recovery for emotional distress suffered by "direct victims." A direct victim is one who suffers distress when the defendant's negligence by its nature is "directed to" the plaintiff as well as a third party. Molien, 27 Cal.3d at 923, 167 Cal.Rptr. 831, 616 P.2d 813 (doctor misdiagnosed wife with syphilis and told her to tell husband, who thereby became a "direct victim" of doctor's negligence); Ochoa v. Superior Court, 39 Cal.3d 159, 172-73, 216 Cal.Rptr. 661, 703 P.2d 1 (1985) (mother who watched son die of neglect not a direct victim because negligence was directed primarily at decedent); Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal.3d 583, 588-92, 257 Cal.Rptr. 98, 770 P.2d 278 (1989) (mothers who consulted psychotherapist with their sons for parent-child problems were direct victims of psychotherapist's molestation of the children); Christensen v. Superior Court, 54 Cal.3d 868, 894-902, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (close family members were direct victims of negligence of mortuaries and crematoria in mishandling remains).
 
 
 26
 Whether or not the lines between "bystander" and "direct victim" liability have been blurred,[2] we are concerned here with neither. The district court concluded that the Di Costas state no claim for bystander liability under Thing, and they do not appeal this ruling.[3] Nor do the Di Costas claim they are "direct victims" under Molien and its progeny.[4] The Di Costas, rather, argue that they feared for their own safety, were within the "zone of danger" created by the United States's negligence,[5] and have stated a valid claim based on Lindley, Webb, and Cook.
 
 
 27
 The question we have to decide, therefore, is whether the recovery of damages for negligent infliction of emotional distress resulting from loud noises of unknown origin which cause the plaintiffs to fear for their safety is within the scope of recovery recognized in the Lindley line of cases. I think it is not, because the Di Costas, unlike the plaintiffs in these cases, were unaware of the injury-causing event that threatened their safety.
 
 
 28
 In Lindley, plaintiff as well as her children were confronted by a run-away, 165-pound chimpanzee. The chimp attacked the plaintiff's children inside their house, and she fought him off. 179 Cal. at 299, 302, 176 P. 440. The plaintiff in Webb was on the mezzanine of a building, looking out, when defendant's truck smashed through the front. The plaintiff "viewed the entire occurrence" and feared for her safety. 214 Cal. at 184, 4 P.2d 532. In Cook, the defendant's car, after a collision with another car,
 
 
 29
 ran up and "on to" a vacant lot, the property of plaintiff adjoining her home, where with a loud noise and crash, it collided with a trash burner, thereafter running into a rock and board fence and the corner of her house, all within fifteen feet of her, and causing rocks and parts of the fence "to be thrown and scattered over plaintiff's said property in the direction of plaintiff and about the person of plaintiff" who was on her way to the trash burner.
 
 
 30
 33 Cal.App.2d at 582, 92 P.2d 434. The plaintiff "became fearful of her own safety." Id. And in Vanoni, the "actions and words" of the defendants led the plaintiff passengers to believe that the "aircraft was in mechanical trouble, and ... was going to crash." 247 Cal.App.2d at 794, 56 Cal.Rptr. 115.
 
 
 31
 In each of these cases the plaintiffs were in a position to comprehend the potentially injurious event and to make a connection between that event and the risk of danger to themselves. Put another way, plaintiffs who may recover on account of fear for their own safety will have appreciated why they are in danger. The Di Costas, by contrast, were ignorant of the cause of the noises and merely felt they were in danger.
 
 
 32
 No California case has yet gone so far as to allow recovery for emotional distress from a negligent defendant when the causal link between the event and the threatened injury is not contemporaneously comprehended. Therefore, because the Di Costas' fear was caused by noise alone,[6] and noise alone is neither threatening nor dangerous, their recovery for fright cannot be founded upon existing law.
 
 
 33
 For this reason, we must decide whether California would expand Lindley liability, or limit it. In determining whether damages for emotional distress may be recovered in a negligence action, "[t]he traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law." Marlene F., 48 Cal.3d at 588, 257 Cal.Rptr. 98, 770 P.2d 278 (quoting Slaughter v. Legal Process & Courier Serv., 162 Cal.App.3d 1236, 1249, 209 Cal.Rptr. 189 (1984)).
 
 
 34
 Over the years the California Supreme Court has recast the concept of duty. Originally focused on foreseeability, see Dillon, 68 Cal.2d at 739, 69 Cal.Rptr. 72, 441 P.2d 912; Ochoa, 39 Cal.3d at 166, 170, 216 Cal.Rptr. 661, 703 P.2d 1, the inquiry has increasingly been narrowed because of "the need to limit the number of persons to whom a negligent defendant owes a duty of care." Elden v. Sheldon, 46 Cal.3d 267, 276, 250 Cal.Rptr. 254, 758 P.2d 582 (1988); see Marlene F., 48 Cal.3d at 588, 257 Cal.Rptr. 98, 770 P.2d 278 ("Whether a defendant owes a duty of care ... depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.") (emphasis added; quoting Slaughter, 162 Cal.App.3d at 1249, 209 Cal.Rptr. 189); see also Thing, 48 Cal.3d at 654 n. 3, 662-64, 257 Cal.Rptr. 865, 771 P.2d 814 ("foreseeability of the injury alone is not a useful 'guideline' or a meaningful restriction on the scope of" action for negligent infliction of emotional distress); Christensen, 54 Cal.3d at 885-86, 2 Cal.Rptr.2d 79, 820 P.2d 181 (foreseeability only one of many factors to consider in determining existence of duty).
 
 
 35
 In Marlene F., the court defined the parameters by declaring that "[d]amages for severe emotional distress ... are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278. No one contends that there was any relationship between the air traffic controllers in this case and the Di Costas. Nor do the Di Costas suggest that the United States assumed a duty to control traffic quietly.[7] This leaves the question whether California would impose a duty as a matter of law.
 
 
 36
 The California Supreme Court has spelled out the considerations that inform whether to impose such a duty upon defendants:
 
 
 37
 It is a fundamental proposition of tort law that one is liable for injuries caused by a failure to exercise reasonable care. We have said, however, that in considering the existence of "duty" in a given case several factors require consideration including "the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."
 
 
 38
 Christensen, 54 Cal.3d at 885-86, 2 Cal.Rptr.2d 79, 820 P.2d 181 (quoting Thompson v. County of Alameda, 27 Cal.3d 741, 750, 167 Cal.Rptr. 70, 614 P.2d 728 (1980)). On balance, these considerations point to a limitation on liability in the Di Costas' case.
 
 
 39
 While it is not altogether unlikely that a loud noise that sounds like a sonic boom and is the result of negligent air traffic controlling will be frightening to those who hear it, a loud noise from a sonic boom that is the result of properly controlled aircraft is just as likely to be frightening. Absent contemporaneous comprehension of an injury-threatening event (in this case, the collision and crash), the effect of the "boom" is the same and the foreseeability of emotional distress no different. Nor are loud noises, as such, all that likely to cause severe emotional distress, at least among those with normal levels of fortitude who live under air space that is well travelled. Therefore, both the certainty of injury and the closeness of the connection between the defendant's conduct and the injury suffered are problematic.
 
 
 40
 The controllers' conduct has been found negligent, and its consequences are certainly tragic. It was not, however, outrageous or reprehensible or morally blameworthy with respect to the Di Costas. Cf. Christensen, 54 Cal.3d at 896-98, 2 Cal.Rptr.2d 79, 820 P.2d 181 (conduct of mortuaries in mishandling remains was "outrageous and reprehensible"). They were distressed only by the noise, not by the conduct itself. Others who comprehended the crash and its consequences were differently situated, and are differently treated. See, e.g., Estrada v. Aeronaves de Mexico, S.A. (In re: Air Crash Disaster Near Cerritos, California, on August 31, 1986), 967 F.2d 1421 (9th Cir.1992) (allowing recovery for woman who witnessed home burning to ground after crash, knowing her family was trapped inside).
 
 
 41
 In this sense, the negligence which caused the collision and crash will be deterred by existing recoveries for personal injury or wrongful death, emotional distress suffered by those who knew they were in danger from the accident, and emotional distress of bystanders. Imposing additional liability on the United States would not, however, prevent future harm from the thing which caused the injury in the Di Costas' case--loud noises, albeit negligently caused. To penalize negligence in causing loud noises that sound like a sonic boom (because two planes have collided) will not likely deter other loud noises that sound like a sonic boom (because airplanes are flying too fast, for example).
 
 
 42
 By the same token, it is unlikely that similar misconduct can be avoided with minimal cost. Because the triggering event is noise that frightens unknown people within some radius of an event that causes a boom, the extent of exposure cannot readily be ascertained and the means to curtail it cannot meaningfully be implemented. The expense of according a right to recover could be limitless if the noise from a collision, crash, or boom were to occur over a densely populated area. Yet to divert traffic so as to avoid any possibility of loud noises, or of crashes that cause loud noises, in metropolitan airspace is impractical. The burden of doing so would be considerable.
 
 
 43
 Although the injury alleged by the Di Costas is real, a victim seeking this kind of recovery is not likely to suffer an emotional impact beyond that endured by most people who live in our cacophonic society and who frequently hear crashes, booms, sirens, and screeches. While people everywhere empathize with those in Cerritos who experienced this event, there are no compelling reasons why California would recognize recovery for emotional distress when fear for one's own safety comes only from noise. It may be reasonable to spread the risk of damages for severe emotional distress on account of fright from comprehending that an event threatens injury to oneself or close relatives, but it is not nearly so reasonable for the community as a whole to bear the liability for fright from noise alone, wherever it is heard. Instead, to impose this liability appears out of proportion to the culpability of air traffic controllers who negligently cause the noise.
 
 
 44
 Because California has not gone so far as to allow recovery based on fear for one's own safety where the plaintiff has only heard noises without contemporaneous comprehension of an injury-threatening event, and because the factors we are required to consider do not weigh in favor of recognizing a duty to the Di Costas in the absence of such comprehension, I respectfully dissent.
 
 
 
 [1]
 The DiCostas represented at oral argument that the wreckage of the airplanes hit the ground approximately one hundred yards from their home. The United States represented that the distance was three hundred yards
 
 
 [2]
 Although the complaint does not specify how the DiCostas witnessed the accident, the parties agree that the DiCostas did not see the mid-air collision or the wreckage of the airplanes crashing near the DiCostas' house. The DiCostas have alleged only that they heard two loud noises which were apparently caused by the collision and the crash of the wreckage
 
 
 [3]
 The dissent appears to suggest that Webb, Cook, and Lindley v. Knowlton, 179 Cal. 298, 176 P. 440 (1918), established a requirement that plaintiffs allege as part of their prima facie case not only that they were aware of a threat to their own safety, but that they knew the nature of the event that threatened injury. We find nothing in these cases establishing such a requirement and we find no California case giving such an interpretation to Webb, Cook, or Lindley
 
 
 [4]
 Every time Thing states its limitations on recovery for negligent infliction of emotional distress, it says either in the same sentence or an adjacent sentence that it is dealing with the emotional distress caused by injury to a third person. See, e.g., Thing, 257 Cal.Rptr. at 866, 771 P.2d at 815 (the issue was "the right of persons, whose only injury is emotional distress, to recover damages when that distress is caused by knowledge of the injury to a third person caused by the defendant's negligence"); id. (the court concluded that a "limitation of bystander recovery of damages for emotional distress" is necessary); id., 257 Cal.Rptr. at 872, 771 P.2d at 821 ("the only thing that was foreseeable from the Dillon decision was the uncertainty that continues to this time as to the parameters of the third-party NIED action"); id., 257 Cal.Rptr. at 880, 771 P.2d at 829 (concluding that there are limitations on recovery by a plaintiff "for emotional distress caused by observing the negligently inflicted injury of a third person")
 
 
 [5]
 The trial court had provided the plaintiff with an opportunity to amend her complaint to state a claim for the fear and shock she suffered out of concern for her own safety--a "direct victim" claim--but she declined. See id
 
 
 [6]
 The dissent, while acknowledging that a plaintiff need not see the injury-threatening event in order to recover damages for emotional distress, argues that it is not enough simply to hear a loud noise and be put in fear because "noise alone is neither threatening nor dangerous." Dissent, p. 1496-1497 and n. 5. But the fear is caused by the fact that extremely loud, explosive noise is frequently not "noise alone." The Di Costas may reasonably have been put in fear by such a noise, even without knowing whether it was produced by a colliding airplane or some other nearby exploding object. The Di Costas' complaint was dismissed for failure to state a claim. They alleged that the loud noise overhead placed them in fear for their own safety and caused emotional distress. At this stage of the litigation, we cannot reject the DiCostas' claim by characterizing the noise as potentially benign; they are entitled to attempt to prove that the noise was such that they reasonably thought that it signalled a threat of injury to themselves
 
 
 [1]
 While the first amended complaint alleges that plaintiffs "witnesses [sic] the collision and its aftermath," they do not contend that their "witnessing" was other than aural
 
 
 [2]
 See Thing, 48 Cal.3d at 658-59 & n. 5, 257 Cal.Rptr. 865, 771 P.2d 814 (questioning "purported distinction between 'bystander' and 'direct victim' plaintiffs")
 
 
 [3]
 The Di Costas' first amended complaint alleges that "two aircraft crashed to the ground in the immediate vicinity of plaintiffs' residence[,] thereby killing approximately 82 people and causing widespread devastation and destruction in plaintiffs' neighborhood. At the time of the said air crash plaintiffs ... were at home within their said residence, and witnesses [sic] the collision and its aftermath." Thing, which tightened the requirements for a "bystander" to recover damages for negligently inflicted emotional distress, came down after the amended complaint was filed
 
 
 [4]
 As their brief puts it, the "direct victim" line of cases is "not relevant to this action." Plaintiffs-Appellants' Opening Brief at 21; see also Plaintiffs-Appellants' Reply Brief at 3 ("This is not a debate as to whether or not Plaintiffs are 'bystanders' or 'direct victims,' but rather must be an analysis of whether or not California law provides a cause of action to persons who are within a 'zone of danger' created by a Defendant's negligence, who suffer fear for their own safety as a result of that negligence, and who suffer severe emotional distress under the circumstances stemming from the negligent conduct.")
 
 
 [5]
 There is nothing talismanic about the Di Costas' being within the "zone of danger." The phrase was coined in Dillon to describe the limitation Amaya placed on recovery for emotional distress by bystanders who were not themselves in danger, but feared for the safety of others who were endangered. It does not connote a geographic area within which any possible plaintiffs may recover
 
 
 [6]
 This is not to say that plaintiffs must necessarily see the injury-threatening event in order to recover damages for emotional distress, but they must know enough about the event to connect it with injury. Cf. Krouse v. Graham, 19 Cal.3d 59, 74-77, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977) (Dillon 's "requirement of 'sensory and contemporaneous observance of the accident' does not require a visual perception of the impact causing the death or injury."). In Krouse, a bystander case, although the plaintiff did not actually see the defendant's car strike his wife as she was removing groceries from the trunk of her car, "he fully perceived the fact that she had been so struck, for he knew her position an instant before the impact, observed defendant's vehicle approach her at a high speed on a collision course, and realized that defendant's car must have struck her." 19 Cal.3d at 76, 137 Cal.Rptr. 863, 562 P.2d 1022. Thus, the plaintiff's comprehension of the accident was virtually complete as well as contemporaneous
 
 
 [7]
 This distinguishes the Di Costas' case from those in which "direct victim" liability has been recognized. In each "direct victim" case, the defendant has affirmatively assumed a duty to the plaintiff. For example, in Molien, a doctor told the plaintiff's wife that she had syphilis and that she should tell her husband. In so doing, "the doctor assumed a duty to convey accurate information [to the husband] and the husband accordingly was a 'direct victim' of the doctor's negligence." Marlene F., 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278 (discussing Molien ). In Marlene F., plaintiff mothers were patients of the defendant psychotherapist along with their sons, who were being treated together for relational problems. The mothers were thus "direct victims" of defendant's tortious molestation of their sons. Id. at 590-91, 257 Cal.Rptr. 98, 770 P.2d 278. In Christensen, plaintiffs were relatives of decedents whose remains defendants mishandled. They had standing to sue and a duty was owed to them as "direct victims" because the mortuaries had assumed a contractual obligation to treat the deceased respectfully. Christensen, 54 Cal.3d at 883-91, 2 Cal.Rptr.2d 79, 820 P.2d 181